FILED

APR 10 2006

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN R. LOTT, JR. | : |
| Plaintiff, | : |
| v. | : 06CV2007 |
| | : JUDGE CASTILLO |
| | : MAGISTRATE LEVIN |
| STEVEN D. LEVITT and | : |
| HARPERCOLLLINS PUBLISHERS, INC. | : |
| Defendants. | : |

## COMPLAINT

John R. Lott, Jr. ("Lott" or "Plaintiff"), through undersigned counsel, hereby brings this action against Defendants Steven D. Levitt ("Levitt") and HarperCollins Publishers, Inc. ("HarperCollins") for defamation, damages, injunctive relief and other relief, and states as follows:

### THE PARTIES

1. Lott is an individual residing at 5401 Duxford Place, Burke, Virginia. He received his doctorate in economics from UCLA and has held positions at several prestigious universities, including Stanford University, Rice University, UCLA, University of Pennsylvania University of Chicago and Yale University. Most recently, he was a resident scholar at the American Enterprise Institute in Washington, D.C.

2. Levitt is an individual residing, on information and belief, in the Chicago, Illinois area. Levitt is an economics professor in the Department of Economics at the University of Chicago, Illinois.

3. HarperCollins is a corporation with its head office at 10 East 53rd Street, New York, N.Y. and is incorporated in the State of Delaware. HarperCollins is a book publisher.

## JURISDICTION AND VENUE

4. Jurisdiction of this action is proper pursuant to 28 U.S.C. Section 1332(a) in that the action is between citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper pursuant to 28 U.S.C. 1391(a)(2) in that a substantial part of the acts, events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

## FACTUAL ALLEGATIONS RELATING TO COUNT ONE

6. Lott has published extensively in the field of law and economics and economics generally. For over 20 years, he has established a reputation for exacting, credible, and reliable economic analysis. He has gone to great lengths to consistently share his data and his empirical methods many times even before research has been published precisely to allow others to replicate his research. He has written numerous books and articles on the subject of gun control, including More Guns, Less Crime: Analyzing Crime and Gun Control Laws (University of Chicago Press 1998, second edition 2000) and "Crime, Deterrence, and Right-to-Carry Concealed Handguns," co-authored with David Mustard, 26 Journal of Legal Studies 1 (January 1997).

2

7. Lott has conducted extensive research and statistical analysis on the statistical relationship between laws regulating the right to use, carry or own guns and the impact of such laws on serious crime in the United States. Lott has reached the conclusion that laws permitting individuals to carry concealed weapons result in a statistically significant and provable reduction in serious crime rates, including murder, rape, assault and robbery.

8. In April 2005, Levitt and Stephen J. Dubner ("Dubner"), an author who, on information and belief, resides in New York, N.Y., co-authored a best-selling book entitled "Freakonomics." The book has been extraordinarily successful. On information and belief, over one million copies of "Freakonomics" have been sold in the United States alone. On information and belief, many copies of "Freakonomics" have been sold in the State of Illinois, including in Chicago. "Freakonomics" was published by HarperCollins.

9. Levitt and Dubner devote approximately one page of their book to Lott and his research. At pages 133-34, they allege as follows:

> Then there was the troubling allegation that Lott actually invented some of the survey data that supports his more-guns/less-crime theory. Regardless of whether the data were faked, Lott's admittedly intriguing hypothesis doesn't seem to be true. When other scholars have tried to replicate his results, they found that right-to-carry laws simply don't bring down crime.

10. Levitt and Dubner cite two scholarly articles in footnotes at the back of their book which purportedly support the above-quoted statement. At page 221, the authors state as follows:

> **133-34 Lott's gun theory disproved:** See Ian Ayres and John J. Donohue III, "Shooting Down the 'More Guns' Less Crime' Hypothesis," *Stanford Law Review* 55 (2003), pp. 1193-1312; and Mark Duggan, "More

3

Guns, More Crime," *Journal of Political Economy* 109, no. 5 (2001), pp. 1086-1114.

In fact, neither of the two articles relied on by Levitt and Dubner states or concludes that they have been unable to "replicate Lott's results."

11. The allegation that when "other scholars have tried to replicate his results, they found that right-to-carry laws simply don't bring crime" is false and defamatory. On information and belief, there are no published articles in which an economist or other researcher has attempted to replicate Lott's results and concluded that "right-to-carry laws simply don't bring down crime." In fact, every time that an economist or other researcher has replicated Lott's research, he or she has confirmed Lott's conclusion. While other scholars have used different data or methods to analyze the relationship between gun control laws and crime, and in some cases have reached a conclusion that has lead them to disagree with Lott's conclusion, no scholar who has replicated Lott's statistical analysis has concluded that the data and methods on which he relied don't support his conclusion.

12. The term "replicate" has an objective and factual meaning in the world of academic research and scholarship. When Levitt and Dubner allege that "other scholars have tried to replicate his results," the clear and unambiguous meaning is that "other scholars" have analyzed the identical data that Lott analyzed and analyzed it the way Lott did in order to determine whether they can reach the same result. When Levitt and Dubner allege that when "other scholars have tried to replicate his results, they found that right-to-carry laws simply don't bring down crime," they are alleging that Lott falsified his results.

4

13. The allegation that "other scholars" are unable to "replicate [Lott's] results" is not an expression of opinion. Whether or not a scholar can replicate another scholar's results is a fact which is either true or false.

14. The allegation that other scholars have been unable to "replicate [Lott's] results" is defamatory per se because it attacks Lott's integrity and honesty in his profession as an economist, scholar and researcher. The aforesaid allegation is defamatory per se because it damages Lott's reputation in the eyes of the academic community in which he works, and in the minds of the hundreds of thousands of academics, college students, graduate students, and members of the general public who read "Freakonomics."

15. Levitt's allegation that "other scholars" have been unable to "replicate" Lott's conclusion was made with actual malice and with the knowledge that it is false or with reckless disregard for whether it is false. Levitt is intimately familiar with academic research on the subject of the relationship between laws regulating guns and crime and the scholarly papers that have been published on the subject, including papers published in The Journal of Law and Economics. Levitt recently participated in a research study conducted by the National Academy of Sciences that analyzed guns and crime, including the impact of "right-to-carry" laws on crime. "Firearms and Violence: A Critical Review" National Research Council of the National Academies (The National Academies Press 2004). The foregoing study involved an exhaustive review of scholarship in this area. Because of his intimate familiarity with scholarship and research in this area, Levitt's statement that "other scholars" have been unable to "replicate [Lott's] results"

5

was made with knowledge that it was false or with reckless disregard to whether it was false.

16. HarperCollins, the publisher of "Freakonomics," acted with actual malice by, on information and belief, failing to take reasonable steps to ascertain whether Levitt's statement that "other scholars" have been unable to "replicate [Lott's] results" is, in fact true. It would have been a simple and easy step for HarperCollins to read the articles which Levitt cites at page 221 of "Freakonomics" and on which he allegedly relied to support his defamatory statement. Had it done so, it would have determined that they do not support Levitt's statement that "other scholars" have been unable to "replicate [Lott's] research." HarperCollins' failure to take this simple and obvious measure demonstrates its reckless disregard for the truth and therefore actual malice.

## FACTUAL ALLEGATIONS RELATING TO COUNT TWO

17. Lott repeats each and every allegation contained in paragraphs 1-7 above.

18. On information and belief, on or about May 24 or May 25, 2005, John McCall ("McCall"), an economist residing in Texas, sent Levitt an e-mail stating that "You also state that others have tried to replicate [Lott's] research and have failed. Please supply me with appropriate citations so that I might check for myself." In a subsequent e-mail, McCall referred to a special issue of The Journal of Law & Economics (Vol. 44 (2) (pt.2)) published in October 2001 ("Special Issue"), which contains a collection of scholarly articles, including one by Lott on the topic of "Safe Storage Gun Laws: Accidental Deaths, Suicides, and Crime" -- an article that also addresses right-to-carry laws. The Special Issue contains articles delivered at an academic conference co-sponsored by the Center for Law, Economics, and Public Policy at Yale

Law School and the American Enterprise Institute. After discussion with the editors, Lott raised the funds to pay the journal's printing and mailing costs.

19. In his e-mail, McCall stated as follows:

> I went to the website you recommended – have not gone after the round table proceedings yet –
>
> I also found the following citations – have not read any of them yet, but it appears they all replicate Lott's research. The Journal of Law and Economics is not chopped liver.
>
> Have you read through any of these?
> http://johnrlott.tripod.com/postsbyday/RTCResearch.html.

20. Levitt responded by e-mail that same day and stated as follows:

> It was not a peer refereed edition of the Journal. For $15,000 he was able to buy an issue and put in only work that supported him. My best friend was the editor and was outraged the press let Lott do this.

21. The foregoing allegations are false and defamatory. The Special Issue was, in fact, peer reviewed. Levitt knew it was peer reviewed because Lott asked him to contribute an article and told him that the papers would be peer reviewed.

22. Levitt's statement that "For $15,000 [Lott] was able to buy an issue and put in only work that supported him" is also false and defamatory. Lott did not "buy" the issue, nor did he "put in only work that supported him." Lott invited scholars who both agreed and disagreed with him to provide articles. Levitt's statement to McCall is defamatory per se because it attacks Lott's integrity and honesty in his profession as an economist, scholar and researcher as well as the integrity of the Journal and its editors. Levitt's statement was made with actual malice because he knew it was false or he made it with reckless disregard for whether it was false. Levitt knew the statement wasn't true because of his above-mentioned conversation with Lott. Further, Levitt had an article

7

published in a prior special issue of The Journal of Law and Economics that had been set up in exactly the same way, and all of those articles were peer reviewed. Thus, Levitt knew that The Journal of Law & Economics practice was to publish only peer-reviewed articles.

## COUNT ONE
### Defamation Claim Against Levitt and HarperCollins

23. Lott repeats each and every allegation contained paragraphs 1-16 and incorporates the same herein.

24. Levitt and HarperCollins have published a false and defamatory statement about Lott.

25. Levitt and HarperCollins made the defamatory statement with actual malice because they either knew it was false or made the statement with reckless disregard for whether it is false.

26. Lott has been seriously damaged as a result of Levitt's and HarperCollins' defamatory statement.

27. Lott has suffered, and shall continue to suffer, substantial reputational and monetary damages and other injuries as a direct result of Levitt's and HarperCollins' defamatory statement.

28. Wherefore, Lott demands judgment against Levitt and HarperCollins in such amount of actual damages as may be proved at trial, plus attorneys' fees, interest and costs, and such other relief as the Court deems to be just and proper.

29. Lott further demands injunctive relief enjoining Levitt and HarperCollins from any further publication or printing of "Freakonomics" until they have removed defamatory statements about Lott.

## COUNT TWO
### Defamation Claim Against Levitt

30. Lott repeats each and allegations in paragraphs 17-22 and incorporates the same herein.

31. Levitt published a false and defamatory statement in his e-mail to John McCall on May 25, 2005.

32. Levitt made the defamatory statement with actual malice because he either knew it was false or made the statement with reckless disregard for whether it was false.

33. Lott has been damaged as a result of the Levitt's e-mail.

34. Wherefore, Lott demands judgment against Levitt in such amount of actual damages as may be proved at trial, plus attorneys' fees, interest and costs, and such other relief as the Court deems to be just and proper.

## PRAYER FOR RELIEF

35. WHEREFORE, Lott respectfully requests the following relief against Levitt and HarperCollins:

   (i) damages;

   (ii) an injunction enjoining any further publication or printing, or sale of "Frerakonomics," whether by HarperCollins or any other publisher who may be authorized or licensed to publish the book, until all defamatory statements about Lott have been removed;

   (iii) a retraction published in the next and all future printings of "Freakonomics";

   (iv) punitive damages;

   (v) pre-judgment and post-judgment interest;

9

(vi) attorneys' fees and costs;

(vii) such other relief as the Court deems just and proper.

## JURY DEMAND

Lott respectfully requests a jury trial.

Respectfully submitted,

*/s/ Thomas A. Vickers*

Designated Local Counsel
Thomas A. Vickers, Esq.
Vanek, Vickers & Masini, P.C.,
225 W. Washington Street
18th Floor
Chicago, Illinois 60606

Tele: 312-224-1500
Fax: 312-224-15150

Stephen H. Marcus, Esq.
Law Office of Stephen H. Marcus
1050 17th Street, N.W.
Suite 600
Washington, D.C. 20036

Tele: 202-776-0651
Fax: 202-331-7272

Counsel for Plaintiff John R. Lott, Jr.

April 10, 2006