**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN R. LOTT, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 C 2007 |
| | ) | |
| STEVEN D. LEVITT and | ) | Honorable Ruben Castillo |
| HARPERCOLLINS PUBLISHERS INC., | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF FILING

TO:   [See Attached Certificate of Service]

PLEASE TAKE NOTICE that on Wednesday, June 7, 2006, Defendants filed in this court their **Memorandum In Support Of Defendant Levitt's Motion To Dismiss**, a copy of which is hereby served upon you.

                              STEVEN D. LEVITT and
                              HARPERCOLLINS PUBLISHERS LLC.


                              By:   s/ David P. Sanders
                                    One of their attorneys

David P. Sanders (#02452359)
Wade A. Thomson (#6282174)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois  606011
Telephone:  312-222-9350

Slade R. Metcalf
Gail C. Gove
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York  10022
Telephone:  212-918-3000

## **CERTIFICATE OF SERVICE**

I, David P. Sanders, an attorney in this matter, certify that on June 7, 2006, I caused copies of the foregoing **Notice of Filing** and the **Memorandum In Support Of Defendant Levitt's Motion To Dismiss** referenced therein to be served on the persons identified below via telecopier and by U.S. Mail.

| | |
|---|---|
| Stephen H. Marcus, Esq. | Thomas A. Vickers, Esq. |
| Law Office of Stephen H. Marcus | Vanek, Vickers & Masini, P.C. |
| 1050 17th Street N.W. | 225 W. Washington Street |
| Suite 600 | 18th Floor |
| Washington, DC 20036 | Chicago, Illinois 60606 |
| (202) 331-7272 | (312) 224-1510 |

  s/ David P. Sanders
David P. Sanders

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN R. LOTT, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 06 C 2007 |
| v. | ) | |
| | ) | Judge Castillo |
| | ) | |
| STEVEN D. LEVITT and | ) | Magistrate Judge Levin |
| HARPERCOLLINS PUBLISHERS, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT LEVITT'S
<u>MOTION TO DISMISS</u>**

Defendant Steven D. Levitt ("Levitt") submits this memorandum in support of his motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), to dismiss Plaintiff's Complaint in its entirety for failure to state a claim upon which relief can be granted.

The Complaint contains two counts. Count One purports to state a libel *per se* claim against both HarperCollins Publishers LLC (f/k/a HarperCollins Publishers Inc.) ("HarperCollins") and Levitt based on a passage in the book <u>Freakonomics</u> (the "Book"). HarperCollins and Levitt have filed separate motions to dismiss, both of which seek to dismiss Count One of the Complaint under Rule 12(b)(6). Levitt specifically adopts the memorandum submitted by HarperCollins in support of that motion to dismiss Count One of the Complaint.

This memorandum addresses only Levitt's motion to dismiss Count Two of the Complaint. Count Two focuses only on an e-mail (the "E-Mail") which was allegedly sent by Levitt to one John McCall ("McCall") in response to an e-mail inquiry from McCall to Levitt sent some time after the publication of the Book at issue here. This Court should dismiss Count

Two because the E-Mail was constitutionally protected opinion, and if any sentences could be construed to constitute statements of fact, those sentences were not libelous *per se*.

## ARGUMENT

I.   **THE E-MAIL IS CONSTITUITONALLY PROTECTED AS EXPRESSIONS OF OPINION.**

Count Two of the Complaint alleges that John McCall ("McCall"), an "economist residing in Texas," sent Levitt an email asking Levitt to provide support for the statement that "others have tried to replicate [Lott's] research and failed." Compl. ¶ 18. In a subsequent email, McCall allegedly referred to an issue of *The Journal of Law & Economics* (the "Journal") (which Plaintiff terms the "Special Issue") and advised Levitt that he found certain "citations". Although McCall admitted that he had not read *any* of these purported citations yet, he offered the view that "it appears they all replicate Lott's research." Compl. ¶¶ 18-19. Plaintiff alleges that the Special Issue includes articles from a conference sponsored by Yale Law School and the American Enterprise Institute, his former employer, that he invited scholars to contribute articles, and that he "raised funds to pay for the journal's printing and mailing costs." Id. ¶ 1, 18, 22.

According to the Complaint, in response to McCall's e-mail inquiry, Levitt replied on the same day by email:

> It was not a peer refereed edition of the Journal. For $15,000, he was able to buy an issue and put in only work that supported him. My best friend was the editor and was outraged the press let Lott do this.

Compl. ¶ 20 (the "E-Mail"). Plaintiff claims that he was defamed by the E-Mail because: (1) the Special Issue was in fact "peer reviewed" (which may or may not be different from what Levitt wrote in the E-Mail that it was not "peer refereed"); (2) Plaintiff did not "buy" the Special Issue, but merely "raised the funds to pay the journal's printing and mailing costs"; and (3) Plaintiff did not invite only contributing scholars who agreed with him. He claims that his reputation as an

academic and a scholar has been besmirched because of these supposed false and defamatory statements.  Id. ¶ 33.

A.   **The E-Mail Is Protected Under The First Amendment Because It Is Rhetorical Hyperbole and Expresses Levitt's Subjective Point of View.**

The E-Mail contains precisely the sort of "loose, figurative, or hyperbolic language" that the Supreme Court in Milkovich v. Lorain Journal Co., 497 U.S. 1, 21 (1990) referred to as nonactionable rhetorical hyperbole.  Rhetorical hyperbole "consists of terms that are either too vague to be falsifiable or sure to be understood as merely a label for the labeler's underlying assertions."  Dilworth v. Dudley, 75 F.3d 307, 309 (7th Cir. 1996).  Here, the truth or falsity of whether the so-called "Special Issue" was "peer refereed" and contained "only work that supported [Lott]" turns on the evaluators' subjective viewpoint.  What one person considers a "peer" in the academic realm may be another person's "hack," and what one person considers as "supporting" Plaintiff's hypothesis could be blasphemy from Plaintiff's perspective.  Similarly, the claim that Plaintiff "bought the issue" is a figure of speech; what percentage of the Journal's expenses would Plaintiff have had to cover in order to have "bought" that particular edition?[1]

Finally, the term "outraged" is indisputably hyperbolic language; it would be impossible to confirm the truth or falsity of this descriptive statement.  Moreover, Levitt did not say that he was "outraged".  Rather, he said that his friend, the editor of the Journal was.  Because none of the statements in the E-Mail are capable of verification, the E-Mail is protected opinion.  See Drury v. Sanofi-Synthelabo Inc., 292 F. Supp. 2d 1068, 1070 (N.D. Ill. 2003) (calling plaintiff a "cancer" in the workplace is a vague expression for which there is no clear consensus of

---

[1]   Because Plaintiff concedes that he "raised the funds to pay the journal's printing and mailing costs," Compl. ¶ 18, the gist of the allegedly defamatory statement is whether Plaintiff "bought" the issue, not the actual dollar amount he contributed.  The operative inquiry, therefore, is whether the statement that Plaintiff was able to "buy" the issue is an opinion.

3

meaning); Skolnick v. Correctional Medical Services, Inc., 132 F. Supp. 2d 1116, 1127-29 (N.D. Ill. 2001) (whether journalist's articles contained "inaccurate facts" could not be verified, and statements that journalist employed tactics condemned by responsible media, misrepresented his identity, and was deceptive, dishonest and fraudulent were rhetorical hyperbole); McDonagh v. Bergan, No. 03C1465, 2003 WL 21798735, at *3 (N.D. Ill. July 25, 2003) (whether plaintiff physicians' treatment was ineffective could not be proven true or false); see also Brown v. GC America, Inc., No. 05 C 3810, 2005 WL 3077608, at *8 (N.D. Ill. Nov. 15, 2005) (whether plaintiff was competent was incapable of verification because the threshold of competence would vary from person to person; statement that company was "f-ed up" because of plaintiff, was rhetorical hyperbole).

The context of the E-Mail also establishes that it is constitutionally protected speech. Courts consider the context in which an allegedly defamatory statement appears to determine whether it is an opinion. See Cromley v. Board of Educ. of Lockport Township High School Dist. 205, 699 F. Supp. 1283, 1295 (N.D. Ill. 1988). In those situations where the audience knows from the context of the statement that the writer is expressing his or her own opinion, courts may conclude that the statement is opinion even where it is unsupported by disclosed facts. See Mr. Chow v. Ste. Jour Azur, S.A., 759 F.2d 219, 227 (2d Cir. 1985).

Here, Levitt made the statements complained of in the context of a rapid e-mail exchange. Compl. ¶ 20 ("Levitt responded that same day"). He did not offer his views on Plaintiff's article in the Journal until asked by McCall. Under these circumstances, McCall would have construed Levitt's statements as communicating Levitt's own subjective opinion about the particular issue of the Journal McCall queried him about. Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1227 (7th Cir. 1993).

The statements in the E-Mail are opinions. Count Two for libel should be dismissed under the First Amendment.

## II. THE STATEMENTS CONTAINED IN THE E-MAIL ARE NOT LIBELOUS *PER SE*.

Even if the statements in the E-Mail can be construed as false statements of fact, rather than constitutionally protected expression, those statements are not so obviously harmful to Plaintiff's reputation to be actionable as libel *per se*.

*First*, none of the statements in the E-Mail are "so obviously and naturally harmful" to Plaintiff that damage to him may be presumed. Anderson v. Vanden Dorpel, 172 Ill.2d 399, 411-12, 667 N.E.2d 1296, 1301, 217 Ill. Dec. 720, 725 (1996). The E-Mail states that the edition of the Journal which McCall referred Levitt to was not "peer refereed," that Lott bought "an issue and put in only work that supported him," and that Levitt's "best friend was the editor and was outraged the press let Lott do this." Compl. ¶ 20. Without knowing the meaning of the term "peer refereed," or whether it is somehow disreputable in academic circles to have paid for an edition of a journal (or portions thereof, as Plaintiff concedes he did, Compl. ¶ 19), or whether including only works which are consistent with one's theory is common practice in academic circles, it is impossible to conclude that the content of the E-Mail was so "obviously and naturally harmful" that an injury to Plaintiff's reputation must be *presumed*, and it would be on a *per se* claim. Furthermore, considering that disputes among academics are frequent fare, without further explanation, a reader of the E-Mail cannot measure the qualitative assessment, if any, behind the statements complained of. And, even if the single reader of the E-Mail, Mr. McCall, could be construed as a member of academia and involved in this particular dispute, he reasonably could not have viewed Levitt as asserting that Plaintiff lacked ability in his profession simply because he said that an editor of a journal prepared by several others was not "peer

5

refereed" or that Plaintiff only included articles that were consistent with his position or that he funded the publication of the Special Issue.

*Second*, under the Illinois innocent construction rule, even if the Court construes the E-Mail as having *a* defamatory *per se* meaning, this is not the *exclusive* reasonable construction of the E-Mail. The E-Mail expressly states that "*the press let Lott do this*," making clear that the Journal approved the so-called "Special Issue." (emphasis added). Accordingly, the Excerpt can reasonably be interpreted as stating that while the academic press condoned the Special Issue, Levitt's "best friend" and editor disagreed with that decision. This reasonable, alternative construction does not accuse Plaintiff of any wrongdoing or lack of skill in his profession, and therefore the E-Mail is not libelous *per se*. See e.g., Owen v. Carr, 113 Ill. 2d 273, 280-81, 497 N.E.2d 1145, 1148, 100 Ill. Dec. 783, 786 (1989) (statements that plaintiff attorney brought suit to intimidate judge could be innocently construed as defendant attorney's own biased representation of his client's point of view); Gosling v. Conagra, Inc., No. 95 C 6745, 1996 WL 199738, at*5 (N.D. Ill. Apr. 23, 1996) (customer's harsh critique of plaintiff's handling of her complaint could be innocently construed merely to reflect their disagreement over the underlying dispute).

The E-Mail is not defamatory *per se*, either on its face or pursuant to the innocent construction rule. As such, this Court should dismiss Count Two with prejudice as a matter of law.

## CONCLUSION

For the foregoing reasons, defendant Levitt respectfully requests that this Court dismiss the entire Complaint against him with prejudice together with costs, and grant such further relief as it deems appropriate.

Dated: June 7, 2006                                   STEVEN D. LEVITT


                                                      By:____s/ David P. Sanders_____
Slade R. Metcalf                                            One Of His Attorneys
Gail C. Gove
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

David P. Sanders (#02452359)
Wade A. Thomson (#6282174)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois 60611
(312) 222-9350