**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOHN R. LOTT, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 06 C 2007 |
| ) | |
| STEVEN D. LEVITT and ) | Honorable Ruben Castillo |
| HARPERCOLLINS PUBLISHERS INC., ) | |
| ) | |
| Defendants. ) | |

## NOTICE OF FILING

TO:    [See Attached Certificate of Service]

     PLEASE TAKE NOTICE that on Wednesday, June 7, 2006, Defendants filed in this court their **Memorandum In Support Of Defendant HarperCollins' Motion To Dismiss**, a copy of which is hereby served upon you.

                                             STEVEN D. LEVITT and
                                             HARPERCOLLINS PUBLISHERS LLC.

                                      By:    s/ David P. Sanders
                                             One of their attorneys

David P. Sanders (#02452359)
Wade A. Thomson (#6282174)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois  606011
Telephone:  312-222-9350

Slade R. Metcalf
Gail C. Gove
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York  10022
Telephone:  212-918-3000

## **CERTIFICATE OF SERVICE**

      I, David P. Sanders, an attorney in this matter, certify that on June 7, 2006, I caused copies of the foregoing **Notice of Filing** and the **Memorandum In Support Of Defendant HarperCollins' Motion To Dismiss** referenced therein to be served on the persons identified below via telecopier and by U.S. Mail.

| | |
|---|---|
| Stephen H. Marcus, Esq. | Thomas A. Vickers, Esq. |
| Law Office of Stephen H. Marcus | Vanek, Vickers & Masini, P.C. |
| 1050 17th Street N.W. | 225 W. Washington Street |
| Suite 600 | 18th Floor |
| Washington, DC 20036 | Chicago, Illinois 60606 |
| (202) 331-7272 | (312) 224-1510 |

                                                                        s/ David P. Sanders
                                                                       David P. Sanders

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN R. LOTT, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 06 C 2007 |
| v. ) | |
| ) | Judge Castillo |
| ) | |
| STEVEN D. LEVITT and ) | Magistrate Judge Levin |
| HARPERCOLLINS PUBLISHERS, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANT
<u>HARPERCOLLINS' MOTION TO DISMISS</u>**


Slade R. Metcalf
Gail C. Gove
HOGAN & HARTSON L.L.P.
875 Third Avenue
New York, New York 10022
(212) 918-3000

David P. Sanders (#02452359)
Wade A. Thomson (#6282174)
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois 60611
(312) 222-9350

Defendant HarperCollins Publishers LLC (f/k/a HarperCollins Publishers Inc.) ("HarperCollins") submits this memorandum of law in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), to dismiss Count One of the Complaint ("Compl.") as against it.

## Introduction

One of the great benefits of academic debate is that participants are free to express deeply felt opinions about their theories and their research. Debates about welfare reform, bioethics, eradication of drugs, and, as relevant here, the connection between the availability of guns and the drop in our urban crime rates -- all permit many voices to join the discussion, hone their views, and try to persuade the listener or the reader as to the efficacy of their positions. This case involves just such a debate. Plaintiff, an academic and former professor of the University of Chicago, has accused a fellow academician and economist (who is currently a University of Chicago professor) and the economist's book publisher of defaming the plaintiff by questioning the conclusions of his research.

The First Amendment to the U.S. Constitution provides special protection for this kind of vigorous, often hard-edged exchange of lively opinions. Courts in this country have repeatedly held that the answer to vigorous debate is not defamation awards, but more speech. As long as a speaker, writer, or publisher is not asserting a provably false and defamatory statement of fact against another person, the First Amendment presents an impenetrable barrier to a defamation suit. This Court should acknowledge that this suit is merely a recapitulation of opposing academic opinions and dismiss the Complaint.

## Factual Background

**A.   The Book**

The book at the center of this dispute is entitled <u>Freakonomics: A Rogue Economist Explores the Hidden Side of Everything</u> (the "Book"). (A copy of the Book has been submitted as Exhibit 1 to the motion to dismiss.)[1] The Book was written by defendant Steven D. Levitt ("Levitt") and Stephen J. Dubner (who is not a party to this action), and published by HarperCollins in April of 2005. <u>See</u> Compl. ¶ 8.

Although <u>Freakonomics</u> is about economics, it does not involve the usual technical economic analysis one would expect from a "heralded scholar" like Levitt. <u>See</u> Book Jacket, Front Cover, ¶ 2. To "redefine the way we view the modern world" (Book Jacket, Inside Cover), the authors ask a series of intriguing questions, including: "What do schoolteachers and sumo wrestlers have in common?," "Why do drug dealers still live with their moms?," and "How is the Ku Klux Klan like a group of real estate agents?" <u>See</u> Book Contents, pp. v – viii. The authors also employ statistics, history, and storytelling to illustrate their ideas – much of which pertains to the greater Chicago area in particular. <u>See</u> Book, pp. 25-38 (cheating by Chicago public school teachers); pp. 93-109 (gang leader in a Chicago neighborhood); pp. 157-161 (school choice and race in Chicago); p. 173 (Illinois governor's plan to mail books to all children). The text of the Book shows that the authors' goal is not to conclusively resolve these questions, but to entice the reader to ask more of them. To wit: more questions, more speech, more opinions.

---

[1] The Court may consider the Book on this motion to dismiss, without converting the motion into a motion for summary judgment, because "[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim," as the Book is here, e.g. Compl. ¶¶ 8-10. <u>Venture Assocs. Corp. v. Zenith Data Sys. Corp.</u>, 987 F.2d 429, 431 (7th Cir. 1993).

**B.	The Parties**

Plaintiff is a resident of Virginia and former professor at the University of Chicago in Illinois. Compl. ¶ 1. He is an economist who has written several books and articles on the subject of gun control. Compl. ¶ 2, 6. Based on his research, Plaintiff believes that "laws permitting individuals to carry concealed weapons result in a statistically significant and provable reduction in serious crime rates." Compl. ¶ 7.

Defendant Levitt is a professor in the Department of Economics at the University of Chicago. Compl. ¶ 2. He resides in Chicago, Illinois. Id. Defendant HarperCollins, the publisher of Freakonomics, is a Delaware limited liability corporation with its principal place of business in New York, New York. Compl. ¶ 3.

**C.	The Complaint**

**1.	Count One: The Book**

Count One of the Complaint asserts a claim for libel *per se* arising out of a passage in Chapter Four of the Book, entitled "Where Have All the Criminals Gone?" See Book, pp.118-144. In that chapter, the authors set forth their primary theory that the substantial reduction in crime during the 1990s was due in large part to the loosening of abortion prohibitions in the early 1970s. The authors reject several conventional theories, such as a strong economy, an aging population, stronger gun laws, more sophisticated crime fighting, and the increased severity in punishment (including wider use of capital punishment), as being the prime causes of the lower crime rates. It is in the context of the discussion of gun-control laws that the Book addresses Plaintiff's counter-argument that more guns in the hands of law-abiding citizens leads to lower crime rate. In full, the relevant passage referring to Plaintiff (which is the only passage in the

3

Book which refers to him) is as follows (with the language in the Complaint appearing in boldface) (the "Excerpt"):

> Then there is the opposite argument – that we need *more* guns on the street, but in the hands of the right people (like the high-school girl above, instead of her mugger). The economist John R. Lott, Jr. is the main champion of this idea. His calling card is the book *More Guns, Less Crime*, in which he argues that violent crime has decreased in areas where law-abiding citizens are allowed to carry concealed weapons. His theory might be surprising, but it is sensible. If a criminal thinks his potential victim may be armed, he may be deterred from committing the crime. Handgun opponents call Lott a pro-gun ideologue, and Lott let himself become a lightning rod for gun controversy. He exacerbated his trouble by creating a pseudonym, "Mary Rosh," to defend his theory in online debates. Rosh, identifying herself as a former student of Lott's, praised her teacher's intellect, his evenhandedness, his charisma. "I have to say that he was the best professor that I ever had," s/he wrote. "You wouldn't know that he was a 'right-wing' ideologue from the class. … There were a group of us students who would try to take any class that he taught. Lott finally had to tell us that it was best for us to try and take classes from other professors more to be exposed to other ways of teaching graduate material." **Then there was the troubling allegation that Lott actually invented some of the survey data that support his more-guns/less-crime theory. Regardless of whether the data were faked, Lott's admittedly intriguing hypothesis doesn't seem to be true. When other scholars have tried to replicate his results, they found that right-to-carry laws simply don't bring down crime.**

Book, pp. 133-34; Compl. ¶ 9. (Plaintiff does not allege in Count One that the information in the Excerpt about the invented student "Mary Rosh" or the statement that "there was the troubling allegation that Lott actually invented some of the survey data," is either false or defamatory. See, Richard Morin, "Scholar Invents Fan to Answer His Critics", *Washington Post*, February 1, 2003 at C01; John Wiener, "Gun-Research 'Freak'-Out", *Los Angeles Times*, May 31, 2006.)

The Complaint cites to a portion from the "Notes" section at the end of Freakonomics which identifies the authorities the authors relied in the preceding chapters. That section provides in part:

> "**133-34 Lott's gun theory disproved:** See Ian Ayres and John J. Donohue III, 'Shooting Down the 'More Guns, Less Crime' Hypothesis,' *Stanford Law Review* 55 (2003), pp. 1193-1312; and Mark Duggan, 'More Guns, More Crime,' *Journal of Political Economy* 109, no. 5 (2001), pp. 1086-1114.

Book, p. 221; Compl. ¶ 10 (the "Footnote").[2]

Plaintiff alleges that the Excerpt and Footnote are false and defamatory because "no other scholar who has replicated Lott's statistical analysis has concluded that the data and methods on which he relied don't support his conclusion." Compl. ¶ 11. He also alleges that "the term 'replicate' has an objective and factual meaning in the world of academic research and scholarship," and that based on that meaning, the Excerpt accuses him of having "falsified his results." Compl. ¶ 12. According to Plaintiff, the use of the term "replicate" is defamatory *per se* because it damaged his reputation "in the eyes of the academic community in which he works." Compl. ¶ 14.

### 2. Count Two: The E-Mail

Count Two of the Complaint is alleged solely against Levitt and is based on an email that Levitt supposedly sent to one John McCall, an "economist residing in Texas." Levitt has filed a separate motion to dismiss that count.

## ARGUMENT

### I. THE EXCERPT IS A CONSTITUTIONALLY PROTECTED EXPRESSION OF OPINION.

The First Amendment to the United States Constitution "was fashioned to assure unfettered interchange of ideas" among the American people. Roth v. United States, 354 U.S. 476, 484 (1957). It "presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection." United States v. Associated Press, 52 F. Supp. 362, 372 (S.D.N.Y. 1943) (Hand, J.). In Milkovich v. Lorain Journal Co., 497 U.S. 1 (1990), the Supreme Court reaffirmed that expressions of opinion are

---

[2] That section also includes citations for Lott's book and an article he authored in the *Journal of Law & Economics* about his "right-to-carry" theories, see Book, p. 221, but the Complaint does not refer to those citations.

constitutionally protected so long as they cannot reasonably be interpreted as asserting provably false facts. Id. at 20. The Constitution also protects "loose, figurative, or hyperbolic language which would negate the impression that the writer was seriously maintaining" actual facts about the plaintiff. Id. at 21.

Following Milkovich, the Seventh Circuit held that "if it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable." Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1227 (7th Cir. 1993) (Posner, Ch. J.). Whether a statement is non-actionable opinion under the First Amendment is a question of law. Lifton v. Board of Educ. of the City of Chicago, 318 F. Supp. 2d 674, 678 (N.D. Ill. 2004), aff'd, 416 F.3d 571 (7th Cir. 2005).

Recognizing that academic debate is a prototypical home for intellectual opinion, courts in this country have held that statements asserted in that context are quintessentially protected opinion. See e.g., Underwager v. Salter, 22 F.3d 730 (7th Cir. 1994); Ezrailson v. Rohrich, 66 S.W.3d 373 (Tex. App. 2001); Guitar v. Westinghouse Elec. Corp., 396 F. Supp 1042 (S.D.N.Y. 1975), aff'd, 538 F.2d 309 (2d Cir. 1976). Statements criticizing a scholar's ideas are protected opinion because "judges are not well-equipped to resolve academic controversies, …and scholars have their own remedies for unfair criticisms of their work – the publication of a rebuttal." Dilworth v. Dudley, 75 F.3d 307, 310-11 (7th Cir. 1996) (defendant professor's statement that plaintiff's articles regarding Cantor's diagonal process were a "crank" and "no credit to the state of Wisconsin" were protected opinion).

Courts have also held statements about inherently controversial topics are protected opinion because a judge or a jury cannot resolve the underlying issue. See Lane v. Random

House, Inc., 985 F. Supp. 141, 150-51 (D.D.C. 1995) (who killed John F. Kennedy); Underwager v. Channel 9 Australia, 69 F.3d 361, 367 (9th Cir. 1995) (how one proves child abuse); Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092-93 (4th Cir. 1993) (a charity's activities related to soldiers in the Persian Gulf).

These principles apply with special force to statements disputing scientific theories or results drawn from research because such issues should be resolved by "[m]ore papers, more discussion, better data, and more satisfactory models – not larger awards of damages." Underwager v. Salter, 22 F.3d 730, 736 (7th Cir. 1994). See Kirk v. CBS, Inc., No. 83C2764, 1987 WL 11831, *3 (N.D. Ill. June 4, 1987) (statements that plaintiff chiropractor was a quack, committed a fraud on her patients, and practiced beyond the scope of her license); see also Spelson v. CBS, Inc., 581 F. Supp. 1195 (N.D. Ill. 1984); Freyd v. Whitfield, 972 F. Supp. 940, 945-46 (D. Md. 1997).

Also, statements which merely raise questions about a plaintiff's ideas or activities are protected opinions. See Sullivan v. Conway, 157 F.3d 1092, 1097 (7th Cir. 1998) (calling the plaintiff "a very poor lawyer is to express an opinion that is so difficult to verify or refute that it cannot feasibly be made a subject of inquiry by a jury"); Partington v. Bugliosi, 56 F.3d 1147, 1154 (9th Cir. 1995) (criticizing a trial's lawyer's performance); Thomas v. Los Angeles Times Communications, LLC, 189 F. Supp. 2d 1005 (C.D. Cal. 2002) (statements raising questions about the historical accuracy of plaintiff's book).

A primary factor in analyzing whether the complained of words are protected opinion or provably false facts is the overall context in which those words were stated. See Dilworth, 75 F.3d at 310; Partington, 56 F.3d at 1153; Phantom Touring Inc. v. Affiliated Publications, 953 F.2d 724, 727 (1st Cir. 1992), cert denied, 504 U.S. 974 (1992). Here, the context of the Book's

7

discussion of Plaintiff's research is critical to the Court's determination of whether the Excerpt is protected opinion and reflects the authors' subjective viewpoint, rather than provably false facts.

*First*, the Excerpt appears in a book designed to invite readers to ask "a lot of questions," (Book, p. 206), and to consider conflicting theories on a range of issues. The chapter in which it appears asks, "Where Have All the Criminals Gone?" and explores various ideas about why crime has markedly diminished. The particular passage in which the Excerpt appears presents one of those theories – that less stringent gun control laws reduce crime. Alerting the reader that the discussion of this theory involves the authors' subjective viewpoints, the Excerpt states that Plaintiff's theory is a "sensible" one. The Excerpt expressly leaves aside the question whether Plaintiff's data allegedly supporting that theory were faked, and states that other scholars have arrived at dissimilar conclusions. Construed in context, the Excerpt reflects the authors' analysis that there are competing views about the subject; that Plaintiff's hypothesis may not be well-founded; or even that the authors or others scholars are critical of Plaintiff's hypothesis. In short, readers of this non-academic book would understand that scholars and academics have debated this controversial issue of whether gun control laws reduce crime.

*Second*, the Excerpt is replete with word choices that clearly signify that the authors are commenting on the debate and controversy over Plaintiff's more guns/less crime theory. E.g., his "theory might be surprising", Plaintiff "let himself become a lightning rod for gun controversy", Plaintiff "exacerbated his trouble", his "admittedly intriguing hypothesis doesn't seem to be true", and "other scholars have tried to replicate his results". All of these words highlight the hypothetical and argumentative nature of the passage and of the entire Book.

*Third*, the Book does not make definitive factual assertions that Plaintiff engaged in any unprofessional or criminal acts. The Book rather tells the reader that there has been a "troubling

allegation" that Plaintiff "invented" some of his data (a statement that Plaintiff does not challenge). The Book then relates that whether or not Plaintiff's data were faked – about which the Books takes no position – the hypothesis "doesn't <u>seem</u> to be true." (Emphasis supplied.) The authors then report that some "other scholars" have drawn different conclusions from Plaintiff, because those scholars could not substantiate (or "replicate") Plaintiff's *results*. The Excerpt clearly does not say that these other scholars (who are specifically identified in the Notes at the back of the Book) followed precisely the protocols used by Plaintiff. The Excerpt, fairly read, says only that the conclusions reached by these scholars did not support Plaintiff's "hypothesis", a meaning reinforced by the remainder of that sentence: "they found that right-to-carry laws simply don't bring down crime."

Overall, in the context of the Book, the Excerpt expresses a "subjective view, an interpretation", not "objectively verifiable facts". <u>Haynes</u>, 8 F.3d at 1227. <u>Freakonomics</u> is a book in which a "rogue economist explores the hidden side of everything." Economics, like medical science, is "at best, an inexact science" about "which many different theories and philosophies exist." <u>See</u> <u>Kirk</u>, <u>supra</u>, 1987 WL 11831, at *3. As Judge Easterbrook has written, "[s]cientific controversies must be settled by the methods of science rather than by the methods of litigation." <u>Underwager v. Salter</u>, 22 F.3d at 736. Thus, the Excerpt is non-actionable speech under the First Amendment. Count One should be dismissed.

## II.    THE STATEMENTS COMPLAINED OF ARE NOT DEFAMATORY *PER SE.*

In the event that this Court concludes that the Excerpt is not fully protected as opinion and that some portions of the Excerpt could be construed as false statements of fact, those statements are not defamatory *per se* under either Illinois or (if applicable) Virginia law.

**A.      Illinois State Law Applies to Plaintiff's Defamation Claims.**

A federal court exercising its diversity jurisdiction over state law claims must generally apply the choice-of-law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 497, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941). Illinois applies the "most significant relationship" test in defamation actions. Washington Nat'l. Ins. Co. v. Administrators, 2 F.3d 192, 196 (7th Cir. 1993). In Cook v. Winfrey, 141 F.3d 322 (7th Cir. 1998), the Court of Appeals stated that in multi-state libel cases, the law of the victim's domicile applies. Id. at 329. Since then, however, courts continue to apply the "most significant relationship test" in determining which state's law should apply. See Global Relief Foundation v. New York Times Co., No. 01C8821, 2002 WL 31045394, at *10-11 (N.D. Ill. Sept. 11, 2002); Quality Carriers, Inc. v. MJK Distribution, Inc., No. 02-CV-0148, 2002 WL 506997, at *9 (S.D. Ill. Apr. 3, 2002); Conseco Group Risk Mgmt. Co., v. Ahrens Financial Systems, Inc., No. 00C6457, 2000 WL 1889637, *3-4 (N.D. Ill. Dec. 27, 2000); Wilkow v. Forbes, No. 99C3477, 2000 WL 631344, at *5 (N.D. Ill. May 15, 2000), aff'd on other grounds, 241 F.3d 552 (7th Cir. 2001). The contacts to be analyzed for purpose of the most significant relationship test are: (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered. Vantassell-Matin v. Nelson, 741 F. Supp. 698, 703 (N.D. Ill. 1990).

Although Illinois "courts still give presumptive weight to the place of injury, that presumption may be readily overcome if another state has a more significant interest in applying its law." Id. at 703, citing Kaczmarek v. Allied Chemical Corp., 836 F.2d 1055, 1058 (7th Cir. 1987). See, e.g., Global, 2002 WL 31045394, at *11 (applying Illinois law to the interpretation

of the cause of action for libel and California law to the defenses to the libel claim). See also Saenz v. Playboy Publications, Inc., No. 81C5723, 1984 WL 648 (N.D. Ill. June 14, 1984).

Here, Illinois clearly has the most significant relationship to this case. The only connection to Virginia is the fortuitous fact that Plaintiff resides there. His professional life, according to his *curriculum vitae* ("C.V.") (contained on his website (http://johnrlott.tripod.com)) has been in several states, but never in Virginia. He worked at the University of Chicago from July 1994 through August 1999 and taught at other universities not located in (or even near) Virginia over the past twenty years, such as Yale University (in Connecticut), University of Pennsylvania, UCLA, Rice University (in Texas), Stanford University (in California), and Texas A&M University. He did work in nearby Washington, D.C. for under two years in 1988-89 and between September 2001 and September 2003.

In contrast, all other major indicators lead to Illinois and specifically Chicago. Plaintiff alleges that "a substantial part of the acts, events and omissions giving rise to Plaintiff's claims occurred in [Illinois]," Compl. ¶ 5, and that "many copies of Freakonomics have been sold in the State of Illinois," Compl. ¶ 8. Again, Plaintiff has spent over 5 years teaching at the University of Chicago. Compl. ¶ 6. Levitt currently resides in Illinois, where he is a professor at the University of Chicago, and lived in Illinois when the Book was published and this libel suit was commenced. Compl. ¶ 7. The Book has an Illinois flavor, containing passages about individuals, issues and history peculiar to Chicago. See Book, pp. 25-38, 93-109, 157-161, 193. Literally, all of the significant contacts to this action are in Illinois, not in Virginia, which has no real connection to this suit, much less having "the most significant relationship". The Court should apply Illinois law to Plaintiff's claims.

## B.   The Excerpt Is Not Libelous *Per se* Under Illinois Law.

Illinois retains the historical distinction between claims for libel *per quod* and libel *per se*. Schaffer v. Zekman, 196 Ill. App. 3d 727, 736, 554 N.E.2d 988, 994, 143 Ill. Dec. 916, 922 (1st Dist. 1990). If the complained of statements require "extrinsic facts or innuendo" to explain their defamatory meaning, they may only be actionable as libel *per quod*, and the plaintiff must plead special damages to establish the existence of an actual injury. See Mittelman v. Witous, 135 Ill. 2d 220, 232-33, 552 N.E.2d 973, 979, 142 Ill. Dec. 232, 238 (1989). By contrast, a cause of action for libel *per se* is a narrow exception to the general tort rule that a plaintiff must plead and prove actual damages to recover from a defendant. Under Illinois law, statements are libelous *per se* only if they are "so obviously and naturally harmful" to the plaintiff on their face that damage to the plaintiff may be presumed from the published words themselves. Anderson v. Vanden Dorpel, 172 Ill. 2d 399, 411-12, 667 N.E.2d 1296, 1301, 217 Ill. Dec. 720, 725 (1996). In addition, statements must fall into one of the specific, common law *per se* categories in order to be actionable *per se*. Id.[3]

The Excerpt is not defamatory *per se* because the words are not sufficiently harmful on their face. Although Plaintiff claims that the statement that "other authors have tried to replicate his results" accuses him of falsifying his results, Compl. ¶ 12, it is only by explaining that "the term 'replicate' has an objective and factual meaning in the world of academic research and scholarship," and that as applied here, it means that "'other scholars' have analyzed the identical data that Lott analyzed and analyzed it the way Lott did," that he arrives at that conclusion. Id.

---

[3]  For individual plaintiffs, the categories of statements that are libelous *per se* are those that impute: (1) the commission of a criminal offense; (2) infection with a loathsome or communicable disease; (3) inability to perform or want of integrity in the discharge of duties of office or employment; (4) words that prejudice a party, or impute lack of ability, in his or her trade, profession or business; and (5) fornication or adultery. Bryson v. News America Publications, Inc., 174 Ill. 2d 77, 88-89, 672 N.E. 2d 1207, 1214-15, 220 Ill. Dec. 195, 202-03 (1996).

12

These are extrinsic facts, and a statement that requires extrinsic facts to explain its defamatory meaning cannot be defamatory *per se*. See Mittelman, 135 Ill. 2d at 232-33, 552 N.E.2d at 979, 142 Ill. Dec. at 238.

But even if the Court concludes that the Excerpt is *capable* of *a* defamatory *per se* meaning, Count One must be dismissed under the Illinois innocent construction rule. Pursuant to that rule, a court, must consider an allegedly defamatory *per se* statement in context and give the words their natural and obvious meaning. If the court concludes that the statement is also susceptible to a reasonable construction that does not carry the *per se* meaning ascribed to it by a plaintiff, then the court *must* hold that a plaintiff's libel *per se* claim is non-actionable as a matter of law and dismiss the claim. See Bryson, 174 Ill. 2d at 91, 94, 672 N.E.2d at 216, 217, 220 Ill. Dec. at 204, 205; Chapski v. Copley Press, 92 Ill. 2d 344, 352, 442 N.E.2d 195, 199, 65 Ill.Dec. 884, 888 (1982). The rule mandates dismissal even if a defamatory *per se* construction is also reasonable, as long as there is also *a* reasonable, non-defamatory *per se* construction. Mittelman, 135 Ill. 2d at 232-33, 552 N.E.2d at 979, 142 Ill. Dec. at 238. A court cannot engage in a balancing of the respective meanings. Id.

Viewed in context, the Excerpt conveys a reasonable meaning that other scholars have disagreed with Plaintiff's conclusions and that Plaintiff's *hypothesis* "doesn't seem to be true." While potentially unpleasant, words that are critical of a plaintiff's professional performance must be dismissed under the innocent construction rule. See Green v. Trinity Int'l University, 344 Ill. App. 3d 1079, 1094, 801 N.E.2d 1208, 1220, 280 Ill. Dec. 263, 276 Dist. 2003) (statements that students complained about plaintiff university professor but that the university unsuccessfully addressed these complaints with plaintiff); Barry Harlem Corp. v. Kraff, 273 Ill. App. 3d 388, 393, 652 N.E.2d 1077, 1081, 210 Ill. Dec. 101, 105 (1st Dist. 1995) (statements that

plaintiff ophthalmologist's treatment had no advantages except for advertising and until further tested, could adversely affect patients); May v. Myers, 254 Ill. App. 3d 210, 214, 626 N.E.2d 725, 728, 193 Ill. Dec. 415, 418 (3d Dist. 1993) (statements that the plaintiff priest made unfounded "wild charges," "threatens to continue his untrue and disruptive public statements," was engaged in a secular profession, and was forbidden to wear the clerical garb); Haberstroh v. Crain Publications, 189 Ill. App. 3d 267, 269, 545 N.E.2d 295, 297, 136 Ill. Dec. 771, 773 (1st Dist. 1989) (statements suggesting that plaintiff professor did not understand the subject he taught).

In addition, a plaintiff cannot rewrite a defendant's statements to avoid operation of the innocent construction rule. See Barry Harlem Corp., 273 Ill. App. 3d at 393, 652 N.E.2d at 1081, 210 Ill. Dec. at 105. The Excerpt states that "[w]hen other scholars have tried to replicate *his results*," they came to a different conclusion, Book, p. 134, not that they "replicated Lott's *statistical analysis*," as Plaintiff rewrites it to state. Compl. ¶ 11. The Excerpt *does not* state that other scholars "analyzed the identical data Lott analyzed and analyzed it the way Lott did in order to determine whether they can reach the same result," as Lott rewrites it to state. Id. ¶ 12.

## C.  The Excerpt Is Not *Per Se* Defamatory Under Virginia Law Either.

Even if the Court applies Virginia law to Plaintiff's defamation claims, the result is the same: the Excerpt is not actionable as defamatory *per se*. In Virginia, statements "which prejudice such a person in his or her profession or trade" are actionable as defamatory *per se*. Perk v. Vector Res. Group, Ltd., 253 Va. 310, 316, 485 S.E.2d 140, 144 (1997). "A defamatory implication must be present *in the plain and natural meaning of the words used*." Chapin, 993 F.2d at 1092 (applying Virginia law) (emphasis supplied). Although a defamatory charge "may be made by inference, implication, or insinuation," "the meaning of the alleged defamatory charge cannot, by innuendo, be extended beyond its ordinary and common acceptation.

14

Moreover, innuendo cannot be employed to introduce new matter, nor extend the meaning of the words used, or make that certain which is in fact uncertain." Perk, 253 Va. at 316, 485 S.E.2d at 144 (citations omitted). Virginia courts also consider the context and broader circumstances in which the allegedly defamatory statements were made. Cha v. Korean Presbyterian Church of Washington, 262 Va. 604, 614-15, 553 S.E.2d 511, 516 (2001).

Under Virginia law, criticisms of a plaintiff's professional performance have been found not to be *per se* defamatory. See Perk, supra, (statements that plaintiff attorney did not report payments made to him by his client's debtors); Chaves v. H.C. Johnson, 230 Va. 112, 115, 335 S.E.2d 97, 99 (Va. 1985) (statements that the plaintiff architect was inexperienced and charged unjustifiably high fees); see also Echtenkamp v. Loudon County Public Schools, 263 F. Supp. 2d 1043, 1063-64 (E.D. Va. 2003) (statements that plaintiff school psychologist behaved inappropriately during a student-counseling group, was inept at handling a situation involving two disabled students, and that her colleagues perceived her as manipulative and defensive).

## **CONCLUSION**

For the foregoing reasons, Defendant HarperCollins Publishers LLC respectfully requests that this Court dismiss the Complaint against it with prejudice together with costs, and other relief as is appropriate.

Dated: June 7, 2006                         HARPERCOLLINS PUBLISHERS LLC

                                                By:    s/ David P. Sanders
                                                       One Of Its Attorneys

| | |
|---|---|
| Slade R. Metcalf | David P. Sanders (#02452359) |
| Gail C. Gove | Wade A. Thomson (#6282174) |
| HOGAN & HARTSON L.L.P. | JENNER & BLOCK LLP |
| 875 Third Avenue | One IBM Plaza |
| New York, New York 10022 | Chicago, Illinois 60611 |
| (212) 918-3000 | (312) 222-9350 |