UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN R. LOTT, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 06 C 2007 |
| v. | ) |
| | ) Judge Ruben Castillo |
| STEVEN D. LEVITT and, | ) |
| HARPERCOLLINS PUBLISHERS, | ) |
| INC., | ) |
| | ) |
| | ) |
| Defendants. | ) |

### THE UNIVERSITY OF CHICAGO'S MOTION FOR A PROTECTIVE ORDER PREVENTING DISCLOSURE OF "PEER REFEREE" IDENTITIES AND OTHER CONFIDENTIAL INFORMATION

The University of Chicago ("the University"), which is not a party to this litigation, hereby seeks a protective order pursuant to Fed. R. Civ. P. 26(c) preventing the disclosure of the identities of confidential "peer referees" involved in the University's publication of an academic journal. In support of its motion, the University states as follows.

I.     **Background Facts**

The University has received multiple subpoenas for documents relating to one of the University's academic publications, *The Journal of Law & Economics* (the "Journal").[1] Two issues of the Journal are involved in the subpoenas: the October 2001

---

[1] On May 22, 2007, the University accepted service by e-mail of a document subpoena from plaintiff's counsel. On May 25, the University agreed to accept from the defendant's counsel, again via e-mail, subpoenas *duces tecum* for two University witnesses: the Journal's Managing Editor, Maureen Callahan, and one of its editors, Austan Goolsbee. On June 1, 2007, the University accepted e-mail service of

issue entitled "Guns, Crime, and Safety," and an earlier, April 1999 issue, "Penalties: Public and Private." The subpoenas essentially seek all documents in the University's possession relating to these two issues, as well as documents reflecting the Journal's publication policies, practices, and procedures. The University has also agreed to produce seven faculty and staff witnesses for deposition in the coming weeks, including the Managing Editor of the Journal and all of the editors who were directly involved in producing the "Guns, Crime, and Safety" issue.

Through its Associate General Counsel, the University objected to the disclosure of "peer referee" or "peer reviewer" identities and proposed that such information be redacted from documents responsive to the subpoenas pending further order of the Court. University counsel also suggested that all documents produced relating to the two issues be subject to a protective order because they reflect highly confidential internal deliberations by Journal editors about submitted manuscripts. Plaintiff's counsel and Defendant's counsel agreed to the University's proposed interim redaction procedure but, despite consultations in person on June 5, 2007 and good faith attempts under LR 37.2 to resolve their differences regarding the scope of an appropriate protective order, counsel for the parties and the University have been unable to reach an accord.

Seven business days after receiving the initial June 1 subpoena, the University sent courtesy copies of the first set of responsive documents relating to the "Guns, Crime,

---

plaintiff's additional subpoena *duces tecum* directed to Teresa Mullen of The University of Chicago Press. On June 11, 2007, the University accepted service of e-mailed subpoenas for three OTHER former editors of the Journal.

and Safety" issue by overnight delivery to the parties' respective counsel.[2] The University is also preparing to produce the remaining documents responsive to the parties' subpoenas subject to any other objections that the University may have.

As the Managing Editor of the Journal, Maureen Callahan, testified in her deposition, the Journal maintains the identity of outside peer referees in the strictest confidence. As Ms. Callahan elaborates in her attached affidavit,

> As is standard practice in the field, the Journal uses outside peer referees to review submitted manuscripts. Referees provide comments to the editors and authors in an effort to assist the editors' efforts to improve the quality of those manuscripts and determine if they are publishable. The Journal's confidential peer referee process is intended to result in more rigorous scholarship.
>
> The Journal shares referee comments with the authors of submitted manuscripts, but it does not disclose the identities of referees to authors except in the rare circumstance where the author, the editor, and referee have all given their advance permission. In my ten years' experience working on the Journal, I can recall only two or three occasions in which a referee was identified to an author; on those occasions, the author sought to thank the referee in an acknowledgment note.
>
> Any disclosure of referees' identities without their consent would have a chilling effect on the willingness of referees to participate in the Journal's refereeing process and the candor of future referee reports. A referee may be a former, current, or future colleague of an author, and the disclosure of a referee's identity could disrupt current or future working relationships.

---

[2] Due to an error in the redaction and duplication process, a portion of a letterhead disclosing one of the peer reviewers was inadvertently turned over to counsel and, apparently, shared with the parties. Counsel for both parties have agreed that the disclosure was inadvertent, and they also agreed to avoid mentioning the name of the referee during Ms. Callahan's deposition. The document containing the mistaken redaction was, however, included as a deposition exhibit. Accordingly, if the Court grants the relief sought in this motion, the University requests that it be allowed to redact any information disclosing the identity of a Journal referee in any deposition exhibits or court filings.

3

(Callahan Affidavit, ¶¶2-4.)

## Argument

Rule 26(c) of the Federal Rules of Civil Procedure empowers the Court to make any order which justice requires to protect against the undue burden of discovery. Disclosing the identities of confidential peer referees would impose an undue burden on the University that outweighs the parties' anticipated benefit from the requested discovery.

As a threshold matter, the balancing process required by Rule 26(c) should take into account the University's status as a non-party. "[I]n balancing the competing hardships, ... the [discovery respondent's] status as a non-party to this litigation... is significant." *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988), *aff'd.,* 870 F.2d 642 (Fed. Cir. 1989). The *Solarex* court denied a motion to compel a non-party academic publisher to disclose the identity of a peer reviewer because it would have a chilling effect on candid peer evaluations in the future:

> An order restricting disclosure of the referee's identity to those involved in the pending litigation would no doubt reduce the likelihood that a large number of potential reviewers would learn that their identities may at some time be disclosed. It would not, however, eliminate that risk, or at least the perception on the part of potential reviewers that such a risk exists. There would thus be a "chilling effect" on candid peer evaluations in the future.

121 F.R.D. at 180. The Callahan Affidavit raises the same concern: "disclosure of referees' identities without their consent would have a chilling effect on the willingness of referees to participate in the Journal's refereeing process and the candor of future referee reports." (Callahan Affidavit, ¶4.)

4

Having established in the Callahan Affidavit that disclosure of the referee identities would be harmful to the University, the burden shifts to the parties seeking discovery to establish that it is both relevant and necessary. *Id.* at 169. And, as the Supreme Court noted in *Herbert v. Lando*, 441 U.S. 153, 157, 99 S. Ct. 1635, 1639 (1979), a higher standard of relevancy applies where the hardships identified in Rule 26(c) are present. *Solarex*, 121 F.R.D. at 169-70.

The personal information sought by the parties in this case does not meet the heightened standard of relevance. The disclosure of the *identities* of the peer referees (as opposed to the substance of their reviews, which have been fully disclosed) will not prove or disprove the truth of the alleged defamatory statement at issue in this case, namely, whether "Guns, Crime, and Safety" was "a peer refereed edition of the Journal" and whether the plaintiff "was able to buy an issue and put in only work that supported him." (Complaint, ¶20.) Indeed, the crux of the allegedly defamatory statement appears to be whether the defendant did in fact reasonably rely on statements apparently made by his "best friend... the editor" of the Journal. "Guns, Crime, and Safety" issue of the Journal.

The parties can also obtain ample evidence regarding the Journal's peer referee process without violating its strict confidentiality policy. The parties have already begun deposing the Journal's Managing Editor at length regarding its peer referee process, and they are preparing to depose all of the editors who worked on the "Guns, Crime, and Safety" issue. These University witnesses will all be allowed to testify about the Journal's peer referee process generally and any specific information they can recall – other than referee names – regarding the referees' work on the "Guns, Crime, and Safety"

issue or any other issue of the Journal. Thus, the parties will have an ample opportunity to question people with first-hand knowledge of the Journal's referee process about the quality and quantity of the referees' efforts on the "Guns, Crime, and Safety" issue as compared to other issues.

In balancing the interests for and against disclosure, the Court should "give more weight to interests that have a distinctively social value than to purely private interests." *Solarex*, 121 F.R.D. at 169. (quoting *Marrese v. American Academy of Orthopaedic Surgeons*, 726 F.2d 1150, 1159 (7th Cir. 1984) (*en banc*). As the court noted in *Solarex*, the confidential academic peer review process advances important public policy considerations:

> The policy of non-disclosure serves to assure that referees can and will provide full and candid reviews of manuscripts. A referee may often be a scientific colleague of the author, and the disclosure of a referee's identity could threaten to disrupt working relationships and inhibit rigorous scrutiny of manuscripts.

*Solarex*, 121 F.R.D. at 170. These same public policy considerations are echoed in the Callahan Affidavit:

> As is standard practice in the field, the Journal uses outside peer referees to review submitted manuscripts. Referees provide comments to the editors and authors in an effort to assist the editors' efforts to improve the quality of those manuscripts and determine if they are publishable. The Journal's confidential peer referee process is intended to result in more rigorous scholarship.

(Callahan Affidavit, ¶2.)

Thus, the University's motion for a protective order in this case mirrors the successful motion in *Solarex*. The University is not a party to this action, and it has

shown that the requested discovery will impose a substantial burden on the University. The litigants, on the other hand, cannot show that the referees' identities are sufficiently relevant to the defamation claim at issue because (i) the alleged defamatory statement does not hinge on the referees' identities; and (ii) the University has allowed unfettered access to the referee process involved in publishing the "Guns, Crime, and Safety" issue through documents and multiple witnesses with first-hand knowledge of the referee process. Indeed, the University has provided all available information *except* for the identities of the peer referees. Because the parties' need for this limited information does not outweigh the harm to the University, a protective order should be granted.

The University also believes that the sensitive, purely internal nature of the editorial process at the Journal should remain confidential and not be disclosed outside this litigation. Accordingly, the University asks that the Court enter a protective order limiting public access to the documents produced by the University as well as the deposition testimony of the University's witnesses.

### III.  Conclusion

For the foregoing reasons, The University of Chicago respectfully requests that:

(i) The Court find that the University has shown good cause for a protective order and allow the University to redact the identity of all peer referees in the documents subpoenaed by the parties;

(ii) The parties redact all inadvertent disclosures of any peer referee identities in documents produced by the University;

(iii) To the extent the Court concludes that additional information regarding peer referees is required (e.g., their title and information regarding their publication and referee experience in the Journal), the University requests that it be allowed to provide such information in response to a written interrogatory;

7

(iv) The parties be precluded from disclosing any peer referee information or editors' comments or internal correspondence produced by the University or the depositions of University witnesses in connection with this litigation pending further order of the Court; and

(v) Any other or additional relief that this Court deems appropriate.

Respectfully submitted,

/s/ Jacob M. Rubinstein
The University of Chicago

Bruce W. Melton
Associate General Counsel
Office of Legal Counsel
The University of Chicago
5801 South Ellis Avenue, Suite 503
Chicago, Illinois 60637
Phone: 773-702-0988
Fax: 773-702-0934

Jacob M. Rubinstein
Meckler Bulger & Tilson LLP
123 North Wacker Drive, 18th Floor
Chicago, Illinois 60606
Telephone: 312-474-7873
Fax 312-474-7898

# EXHIBIT

# CALLAHAN AFFIDAVIT

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN R. LOTT, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 06 C 2007 |
| v. | ) |
| | ) Judge Ruben Castillo |
| STEVEN D. LEVITT and, | ) |
| HARPERCOLLINS PUBLISHERS, | ) |
| INC., | ) |
| | ) |
| | ) |
| Defendants. | ) |

## AFFIDAVIT OF MAUREEN CALLAHAN

I, Maureen Callahan, being duly sworn and under oath, state as follows:

1. I am employed by the University of Chicago Law School as the Managing Editor of The Journal of Law & Economics and The Journal of Legal Studies. I have worked on these publications for approximately ten years. I was the Managing Editor of the April 1999 issue of The Journal of Law & Economics (the "Journal") entitled "Penalties: Public and Private" and the October 2001 issue "Guns, Crime, and Safety."

2. As is standard practice in the field, the Journal uses outside peer referees to review submitted manuscripts. Referees provide comments to the editors and authors in an effort to assist the editors' efforts to improve the quality of those manuscripts and determine if they are publishable. The Journal's confidential peer referee process is intended to result in more rigorous scholarship.

3. The Journal shares referee comments with the authors of submitted manuscripts, but it does not disclose the identities of referees to authors except in the rare circumstance where the author, the editor, and referee have all given their advance permission. In my ten years' experience working on the Journal, I can recall only two or three occasions in which a referee was identified to an author; on those occasions, the author sought to thank the referee in an acknowledgment note.

4. Any disclosure of referees' identities without their consent would have a chilling effect on the willingness of referees to participate in the Journal's refereeing process and the candor of future referee reports. A referee may be a former, current, or future colleague of an author, and the disclosure of a referee's identity could disrupt current or future working relationships.

5. I am competent to testify as to the foregoing matters.

FURTHER AFFIANT SAYETH NOT.

*Maureen Callahan*
Maureen Callahan

Notary Public

OFFICIAL SEAL
PONTUS C NIKLASSON
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:10/11/09