IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN R. LOTT, JR. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 06 C 2007 |
| ) | |
| ) | Hon. Judge Castillo |
| STEVEN D. LEVITT and ) | |
| HARPERCOLLINS PUBLISHERS, INC. ) | |
| ) | |
| Defendants. ) | |

### PLAINTIFF'S MOTION TO RECONSIDER DISMISSAL OF COUNT I

Plaintiff John R. Lott, Jr. ("Lott"), through his attorneys, respectfully requests this Court to reconsider its prior dismissal of Count I of Lott's Complaint and to enter an Order vacating that dismissal. In support of this Motion, Lott states as follows:

### INTRODUCTION

1. Lott, who has published extensively in the field of law and economics, and economics generally, and is the author of a book entitled "More Guns, Less Crime," previously filed a two-count complaint for defamation against defendants Steven D. Levitt ("Levitt"), an economics professor in the Department of Economics at the University of Chicago, and HarperCollins Publishers, Inc. ("HarperCollins"). In Count I, which is against both defendants, Lott alleges that a certain passage pertaining to Lott contained in the book *Freakonomics*, co-authored by Levitt and published by HarperCollins, is defamatory *per se*.[1]

---

[1] In Count II, which is against solely Levitt, Lott alleges that in an e-mail exchange between Levitt and an economist residing in Texas, Levitt made various statements pertaining to Lott that also were defamatory *per se*.

CH1 11274221.1

2. On June 2, 2006, HarperCollins and Levitt each filed motions to dismiss Count I pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted. Those motions were fully briefed by the parties. Thereafter, by Memorandum Opinion and Order ("Order") dated January 11, 2007, this Court granted the motion to dismiss Count I.[2]

3. In arriving at its decision, however, the Court applied the wrong substantive law. It applied the Illinois defamation law, when, in fact, Illinois choice of law rules require the application of Virginia defamation law, which is where Lott was domiciled at the time that *Freakonomics* was published. The application of Virginia defamation law instead of Illinois defamation law under these circumstances is outcome determinative, in that Count I unquestionably states a claim upon which relief can be granted as a matter of well-settled Virginia law.[3] Because this Court's Order was based on an error in the application of governing law, a motion to reconsider is the appropriate vehicle by which to correct that error.

## ARGUMENT

### Standards for a Motion to Reconsider

4. "Although 'motions to reconsider' find no direct authorization in the Rules," applicable case law provides support "for properly conceived motions of that kind." *Quaker Alloy Casting Co. v. Gulfco Industries, Inc.*, 123 F.R.D. 282, 288 n.9 (N.D. Ill. 1988), citing *National Union Fire Ins. Co. of Pittsburgh, PA v. Continental Illinois Corp.*, 116 F.R.D. 252, 253 (N.D. Ill. 1987) (motions to reconsider can play a legitimate role, particularly "when the

---

[2] Levitt's motion to dismiss had also sought a dismissal of Count II of the Complaint. In its Order, however, this Court denied that portion of the motion, finding that Count II did state a claim upon which relief can be granted. The parties have agreed to settle Count II pursuant to a Settlement Agreement and Release, an unsigned copy of which is attached.

[3] By bringing the instant Motion, Lott does not concede that this Court properly applied Illinois defamation law in dismissing Count I, or that Count I fails to state a claim on which relief can be granted under Illinois defamation law.

2

applicable law or the known facts have changed since an issue was submitted to the court"). The circumstances of when a motion to reconsider is appropriate are narrow. Indeed, this Court has frequently stated that it "will not reconsider a prior order unless the movant presents newly discovered evidence, establishes a manifest error of law or fact, or demonstrates that the Court has 'patently misunderstood' [the movant's] position." *Gates v. Towery,* 331 F. Supp. 2d 666, 669 (N.D. Ill. 2004) (Castillo, J.). *See also*, *Wallace v. Chicago Housing Authority*, 321 F. Supp. 2d 968, 971 (N.D. Ill. 2004) (Castillo, J.) (same); *McKenzie v. City of Chicago*, 968 F. Supp. 1268, 1272-73 (N.D. Ill. 1997) (Castillo, J.) (same). Here, such a manifest error of law has occurred.

### This Court Dismissed Count I of the Complaint Under Illinois Defamation Law

5.  In Count I, Lott alleges that the statement in *Freakonomics,* that "[w]hen other scholars have tried to replicate [Lott's] crime results, they found that right-to-carry laws simply don't bring down crime" is false and defamatory. (Compl., ¶¶ 9, 11-16, 23-29). Lott contends that "[t]he term 'replicate' has an objective and factual meaning in the world of academic research and scholarship" and that "[w]hen Levitt and Dubner allege that when 'other scholars have tried to replicate his results, they found that right-to-carry laws simply don't bring down crime,' they are alleging that Lott falsified his results." (Compl., ¶ 12.)

6.  This Court acknowledged that "[i]ndeed, a claim that an academic or economist falsified his results . . . would surely impute a lack of ability and prejudice that person in his profession." (Opinion, at p. 5.) Accordingly, this Court found, in the first instance, "that Lott's pleadings sufficiently allege that the statements in *Freakonomics* . . . are capable of a defamatory *per se* meaning in that they may be interpreted in a manner that imputes a lack of ability in Lott's profession as an economist, academic, and researcher." (*Id.*)

3

7. But, this Court then proceeded to apply the innocent construction rule under Illinois defamation law, which provides that a statement that otherwise falls into the category of defamation *per se* "will not be found to be defamatory if it is 'reasonably capable of an innocent construction.'" (*Id*.), citation omitted. Finding that the "replicate" statement in *Freakonomics* was reasonably susceptible of a non-defamatory interpretation, this Court concluded that the statement could not be defamatory under the Illinois innocent construction rule. Applying that rule, however, constituted a manifest error of law.

### Under Illinois Substantive Choice of Law Rules, Virginia Defamation Law Governs Count I

8. Here, the Court properly noted, and the parties agreed, that it was to apply the substantive law of the state in which the case was filed, and in which the Court sits – Illinois. (Order, at p. 4.) *See Cook v. Winfrey*, 141 F. 3d 322, 329 (7th Cir. 1998), citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 1021 (1941) (a federal court sitting in diversity applies the substantive law of the state in which it sits); *Ruiz v. Blentech Corp.*, 89 F.3d 320, 323 (7th Cir. 1996) (same). But, the analysis should not have ended there. Rather, application of Illinois substantive law includes application of Illinois' governing choice of law rules, which unquestionably are part of the substantive law of the state. *Klaxon,* 313 U.S. at 496, 61 S.Ct. at 1021; *Cook*, 141 F. 3d at 329; *Ruiz*, 89 F.3d at 323. Lott did not intend to, nor does he now, acquiesce to the application of Illinois defamation law for this case.

9. Had consideration been given to the Illinois choice of law rules, it would have been readily apparent, as the Seventh Circuit observed long ago, "***that in multistate defamation cases, Illinois cases indicate that the 'applicable law' is that of the victim's domicile, period***." *Cook*, 141 F.3d at 329, citing *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 916 (7th Cir. 1994) (emphasis supplied). That rule has been consistently followed by courts within the Northern

4

District of Illinois ever since. *Harman v. Gist*, 2003 WL 22053591 at *2 (N.D. Ill Sept. 2, 2003) (applying Missouri defamation law because plaintiff was domiciled in Missouri, but applying Illinois law to other claims); *Porter v. Bankers Life & Casualty Co.*, 2002 WL 31422856 at *3 (N.D. Ill. Oct. 29, 2002) (applying Mississippi defamation law because plaintiff was domiciled in Mississippi, but applying Illinois and Indiana law to other claims); *Eberhardt v. Morgan Stanley Dean Witter Trust FSB*, 2001 WL 111024 at *2 (N.D. Ill. Feb. 2, 2001) (applying Illinois defamation law because plaintiff was domiciled in Illinois); *Kapetanovic v. Cannell*, 1998 WL 474141 at *1 (N.D. Ill. Aug. 6, 1998) (applying Arizona defamation law because that is where plaintiff was domiciled at the time of the defamatory statement, even though plaintiff presently was domiciled in Pennsylvania). *See also, Cohabaco Cigar Co. v. United States Tobacco Co.*, 1998 WL 773696 (N.D. Ill. Oct. 30, 1998) (noting Illinois' multi-state defamation choice of law rule and applying it to a claim for multi-state commercial disparagement).

10. Here, Lott is, and was at the time of publication of *Freakonomics*, domiciled in Virginia. (Compl. ¶1.) Publication of the alleged defamatory statement in *Freakonomics*, which has sold approximately three million copies and previously appeared on the New York Times best sellers list, was unquestionably "multistate." Accordingly, under Illinois choice of law rules, Virginia defamation law governs Count I, not Illinois defamation law.

**Under Virginia Law, Which Does Not Apply the Innocent Construction Rule, Count I States a Cause of Action Sufficient to Withstand a Motion to Dismiss**

11. "In Virginia, the elements of libel are (1) publication of (2) an actionable statement with (3) the requisite intent." *Bay Tobacco, LLC v. Bell Quality Tobacco Products, LLC*, 261 F. Supp. 2d 483, 501 (E.D. Va. 2003). To be actionable, the statement "must be not only false, but also defamatory, that is, it must 'tend[] so to harm the reputation of another as to lower him in the estimation of the community." *Id.* Under Virginia law, it is defamation *per se*

to make false statements that "prejudice [a] person in his or her profession or trade." *Id*.; *Tronfeld v. Nationwide Mutual Ins. Co.*, 272 Va. 709, 713, 636 S.E.2d 447, 450 (2006) (same). In this regard, Virginia defamation law is similar to Illinois defamation law.

12. But the similarities end there, especially with respect to the innocent construction rule, which Virginia does ***not*** apply. Rather, particularly "[f]or purposes of Rule 12(b)(6), the question is simply whether [the implicated statements] are capable of defamatory meaning under Virginia law." *Hatfill v. The New York Times Co.*, 416 F.3d 320, 334 (4th Cir. 2005). If they are, then the pleading is sufficient to withstand a motion to dismiss. *Hatfill*, 416 F.3d at 334 (reversing a prior dismissal under Rule 12(b)(6) of a defamation claim); *Bay Tobacco*, 261 F. Supp. 2d at 502 (denying Rule 12(b)(6) motion to dismiss defamation claim); *see also Tronfeld*, 272 Va. at 715-16, 636 S.E.2d at 451 (reversing order sustaining defendants' *demurrer* to a defamation claim).

13. Moreover, in order to demonstrate that the implicated statements are capable of defamatory meaning, Virginia law even allows that meaning to be reached by inference, innuendo, implication, and negative import. *Hatfill*, 416 F.3d at 331 (defamatory meaning may be found by innuendo and "inferences fairly attributable to them") (citing *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 82 S.E.2d 588 (1954)); *Raytheon Technical Services Co. v. Hyland*, 641 S.E.2d 84, 91 (2007) (defamatory meaning may be found by construing negative import of statement); *Tronfeld*, 272 Va. at 714, 636 S.E.2d at 450 (defamatory statement may be inferred); *Schnupp v. Smith*, 249 Va. 353, 361, 457 S.E.2d 42, 46 (1995) ("a defamatory charge may be made by inference"). In the oft-cited *Carwile* case, the Virginia Supreme Court explained that:

> In order to render words defamatory and actionable it is not necessary that the defamatory charge be in direct terms but it may be made indirectly, and it matters not how artful or disguised the modes in which the meaning is concealed if it is in fact defamatory. Accordingly, a defamatory charge may be made by inference, implication or insinuation.

6

*Carwile*, 196 Va. at 7, 82 S.E.2d 591-92.

14. Here, this Court, without even needing to resort to inference, innuendo, implication, and negative import, has already concluded "that Lott's pleadings sufficiently allege that the statements in *Freakonomics* . . . are capable of a defamatory *per se* meaning in that they may be interpreted in a manner that imputes a lack of ability in Lott's profession as an economist, academic, and researcher." (Opinion, at p. 5.)  That finding automatically establishes the sufficiency of Count I under Virginia law.

15. In fact, the allegations of Count I are similar to those in *Tronfeld*, cited above.  In *Tronfeld*, the plaintiff was a personal-injury attorney who claimed that he was defamed by the statement that plaintiff's clients would have received more money for their claims if they had not hired the plaintiff, but instead dealt directly with the insurance adjuster on the loss.  272 Va. at 715-16, 636 S.E.2d at 451.  The Virginia Supreme Court noted plaintiff sufficiently pled a cause of action for defamation.  The court observed that the statement was susceptible to verification and would not constitute an opinion if the plaintiff was able to show one settlement or judgment obtained by the plaintiff that exceeded a prior offer made by an insurance company.  *Id*. (court observed the "statements are capable of 'a provably false factual connotation'").  In this regard, in order to prevail on Count I, all Lott would need to do is to produce one scholar who has replicated Lott's results by arriving at his conclusion that right-to-carry laws bring down crime. In fact, Lott has pleaded that very showing (which this Court is required to accept as true for the purposes of a Rule 12(b)(6) motion):

> [E]very time that an economist or other researcher has replicated Lott's research, he or she has confirmed Lott's conclusion.  While other scholars have used different data or methods to analyze the relationship between gun control laws and crime, and in some cases have reached a conclusion that has lead them to disagree with Lott's conclusion, no scholar who has replicated Lott's statistical analysis has concluded that the data and methods on which he relied don't support his conclusion.

7

(Complaint, ¶ 11.)

## CONCLUSION

16.     Here, the Court, and the parties, correctly noted that Illinois substantive law governed the motion to dismiss.  Unfortunately, Illinois substantive law was not fully and properly applied because no consideration was given to Illinois' choice of law rules.  Had the Illinois substantive choice of law rules been fully and properly applied, defendants' motion to dismiss would have been denied under Virginia defamation law, which does not apply the innocent construction rule and, by allowing defamatory meaning to be reached by inference, innuendo, implication, and negative import, actually applies a much more liberal standard than does Illinois defamation law.  This incomplete and improper application of Illinois substantive law has resulted in a manifest error of law, which can be corrected by vacating the prior dismissal of Count I.

WHEREFORE, plaintiff John R. Lott, Jr. respectfully requests this Court to reconsider and to vacate its prior dismissal of Count I of the Complaint, and for such other and further relief as this Court deems appropriate and just.

Respectfully submitted,

JOHN R. LOTT, JR.


By:   s/ Mark L. Johnson
         One of His Attorneys

Paul E. Freehling
Mark L. Johnson
Seyfarth Shaw LLP
131 South Dearborn Street
Suite 2400
Chicago, IL 60603
Telephone:  (312) 460-5000
Facsimile:  (312) 460-7000