IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN R. LOTT, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 06 C 2007 |
| v. ) | |
| ) | Judge Castillo |
| ) | |
| STEVEN D. LEVITT and ) | |
| HARPERCOLLINS PUBLISHERS, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OF DEFENDANTS HARPERCOLLINS PUBLISHERS LLC AND
STEVEN D. LEVITT IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT**

Defendants HarperColllins Publishers LLC (f/k/a HarperCollins Publishers Inc.) ("HarperCollins") and Steven D. Levitt ("Levitt") (collectively, "Defendants") submit this memorandum in opposition to the motion of Plaintiff John R. Lott, Jr. ("Lott" or "Plaintiff") for leave to file an Amended Complaint (the "Motion to Amend") pursuant to Fed. R. Civ. P. 15(a).

**Preliminary Statement**

The Motion to Amend amounts to a tardy and futile attempt to resuscitate a complaint that was dismissed with prejudice over seven months ago. Now that Plaintiff has resolved the second of the two initial claims in his original complaint, his new lawyers have ginned up two meritless motions in an apparent attempt to place additional material in the record before appealing this Court's dismissal of Count I of the original complaint to the Seventh Circuit. This Court has already described Plaintiff's recent motion as "the most inappropriate motion to reconsider I've seen in my 13 years on the bench." The Motion to Amend may even surpass the motion to reconsider in its inappropriateness. The Motion to Amend is simply too late and adds

nothing new to the now-dismissed complaint. The original complaint sought to set forth a claim for defamation based on the book *Freakonomics*. Defendants' motions to dismiss that claim were thoroughly briefed, and after careful consideration of the arguments of the parties, this Court issued a comprehensive opinion granting the motions as to Count I of the Complaint. The Court thereupon dismissed Count I with prejudice. Plaintiff's delayed attempt to dress up the dismissed Count I by adding immaterial factual allegations and posing a second claim for libel *per quod* should be seen for the sham that it is. The Court should once and for all reject Plaintiff's pursuit of piece-meal litigation. The Court should not indulge Plaintiff's view of the complaint as a moving target to add to whenever he feels it appropriate. The Motion to Amend should be denied and judgment be entered accordingly.

**BACKGROUND**

Plaintiff filed the Complaint in this action on April 10, 2006. Count I of the Complaint ("Compl.") alleged that a passage in the book *Freakonomics*, which was published by HarperCollins and co-authored by Levitt (the "Book"), is *per se* libelous of him. (Compl. ¶¶ 9-14.) In particular, the Complaint alleged that the authors "devote approximately one page of the book to Lott and his research," which is as follows (with the language in the Complaint appearing in boldface) (the "Excerpt"):

> Then there is the opposite argument – that we need *more* guns on the street, but in the hands of the right people (like the high-school girl above, instead of her mugger). The economist John R. Lott, Jr. is the main champion of this idea. His calling card is the book *More Guns, Less Crime*, in which he argues that violent crime has decreased in areas where law-abiding citizens are allowed to carry concealed weapons. His theory might be surprising, but it is sensible. If a criminal thinks his potential victim may be armed, he may be deterred from committing the crime. Handgun opponents call Lott a pro-gun ideologue, and Lott let himself become a lightning rod for gun controversy. He exacerbated his trouble by creating a pseudonym, "Mary Rosh," to defend his theory in online debates. Rosh, identifying herself as a former student of Lott's, praised her teacher's intellect, his evenhandedness, his charisma. "I have to say that he was the best professor that I ever had," s/he wrote. "You wouldn't know that he was a 'right-wing' ideologue from the class. … There were a group of us students who would try to take any

2

class that he taught. Lott finally had to tell us that it was best for us to try and take classes from other professors more to be exposed to other ways of teaching graduate material." **Then there was the troubling allegation that Lott actually invented some of the survey data that support his more-guns/less-crime theory. Regardless of whether the data were faked, Lott's admittedly intriguing hypothesis doesn't seem to be true. When other scholars have tried to replicate his results, they found that right-to-carry laws simply don't bring down crime.**

(Book, pp. 133-34; Compl. ¶ 9.)  Count I of the Complaint alleged that the Excerpt is libelous *per se* because the "term 'replicate' **has an objective and factual meaning in the world of academic research and scholarship**," and based on that meaning, the Excerpt charges Plaintiff with having "falsified his results."[1] (Compl. ¶ 12 (emphasis added.))  Count II of the Complaint alleged a claim for defamation *per se* arising out of an e-mail communication between Levitt and a retired economist in Texas.  (Compl. ¶¶ 30-34.)

On June 7, 2006, Defendants moved to dismiss Count I on the grounds that the Excerpt is a constitutionally protected expression of opinion and, alternatively, the Excerpt is not *per se* libelous of Plaintiff.  (*See* Memorandum In Support of HarperCollins' Motion to Dismiss, at pp. 5-14.)  Plaintiff opposed that motion by arguing that "'[r]eplicate' in the context of economics and statistics has the same meaning of duplication or repetition," whether Lott's results could be repeated was capable of verification, and the only reasonable construction of the Excerpt, according to Plaintiff, was an allegation that Lott falsified his data. (Plaintiff's Opposition to Defendants' Motion to Dismiss, at 9-21.)

In an opinion and order dated January 11, 2007, this Court granted Defendants' motion to dismiss Count I (the "Opinion").  In doing so, the Court considered the entire Excerpt, not just the word "replicate."  (*See* Opinion at 1 (stating that the Court had completed a cover-to-cover

---

[1] Plaintiff took no issue with the statement that he had "let himself become a lightning rod for gun controversy" or that he was responsible for the fictitious Mary Rosh whom he used to repeatedly pat himself on the back.

3

reading of the Book, including the paragraph about Lott); *id.* at 2-3 (setting forth the Excerpt in full at the outset of its analysis)). The Court held, in applying Illinois libel law as agreed by the parties, that in determining whether the statements complained of are *per se* libelous, "[t]he applicable standard…is not that of the 'world of academic research and scholarship' that Lott describes," but how a "reasonable reader" would interpret the statements complained of. (*Id.* at 7.) From that perspective, the Court concluded that the Excerpt is reasonably capable of an innocent, non-defamatory *per se* construction that "other scholars – using separate data, statistical analyses, and research – have attempted to arrive at the same results as Lott, but have come to different conclusions and disproved Lott's theory." (Opinion at 5, 12.) Accordingly, the Court dismissed Count I of the Complaint *with prejudice*. (*Id.* at 12.) The Court did, however, deny Levitt's motion to dismiss as to Count II.

At a status conference on May 2, 2007, the Court ordered discovery on Count II to conclude on or before July 31, 2007, and scheduled a non-jury trial for October 1, 2007. Thereafter, as the Court is aware from the status conferences in this case, the parties proceeded diligently with discovery, entered into a protective order, exchanged documents and interrogatory responses, and took numerous depositions.

On Friday, July 27, 2007, the parties signed a settlement agreement resolving Count II of the Complaint. On the same day, Plaintiff moved for reconsideration of the Court's dismissal of Count I (including with the motion, for no apparent reason, a copy of the unsigned settlement agreement), arguing that the Court erred by applying Illinois law.

On the following business day, Monday, July 30, 2007, Plaintiff filed the Motion to Amend asking leave to file an Amended Complaint "to amend the previously dismissed Count I (for defamation *per se*) and to plead a new Count II (for defamation *per quod*)" (Motion to

4

Amend at 2.) The proposed Amended Complaint (as attached to the Motion to Amend) revises Count I in the following ways:

- It alleges that the Book was targeted to academics, who would have construed the Excerpt as *per se* libelous. (Amended Compl. ¶¶ 9-10, 14-15.)

- Instead of focusing on the word "replicate", it now complains of words immediately preceding the sentence in which the word "replicate" appears. In particular, the Amended Complaint alleges that the Excerpt charges Plaintiff with having "invented" his survey data and "faked" his results. (*Id.* at ¶¶12-15.) Plaintiff bases these allegations on the portion of the Except that reads: "Then there was the troubling *allegation* that Lott actually invented some of the survey data that supports his more guns/less crime theory. *Regardless of whether the data were faked*, Lott's admittedly intriguing hypothesis doesn't seem to be true." (Book, 133-34. Emphasis added.)

- It adds allegations that Levitt exhibited "hostility" and "hatred" towards Plaintiff when the Book was published. (*Id.* ¶¶ 16-20).[2]

In addition, the proposed Amended Complaint adds a claim for defamation *per quod*, which rests entirely on Plaintiff's allegations supporting the defamation *per se* claim, with the added statement that Plaintiff believes that the Book caused him to sustain "actual damages" based on Plaintiff's conversations with persons in job interviews and at seminars. (*Id*. at ¶ 22.)

The very next day, July 31, 2007, at a scheduled status conference, this Court denied Plaintiffs' motion for reconsideration of dismissal of Count I, and noted that the motion "is the most inappropriate motion to reconsider I've seen in my 13 years on the bench". (A copy of the transcript from that conference is annexed to this memorandum of law.) The Court then gave Defendants until August 14, 2007 to oppose the Motion to Amend, in part because the motion had only been filed the previous afternoon.

---

[2] Rather than merely alleging generally the existence of common law malice in this added, but immaterial language, Plaintiff used information from a document that had been marked by Levitt's counsel "Confidential" in the course of discovery. No attempt by Plaintiff's counsel was made to file the proposed Amended Complaint under seal as required by the stipulated Protective Order.

5

**ARGUMENT**

After having his right to amend extinguished by this Court's dismissal of Count I with prejudice, Plaintiff now seeks leave to amend pursuant to Fed. R. Civ. P. 15(a). "Although the rules reflect a liberal attitude towards the amendment of pleadings, courts in their sound discretion may deny a proposed amendment if the moving party has unduly delayed in filing the motion, if the opposing party would suffer undue prejudice or the pleading is futile." *Campania Mgmt. Co., Inc. v. Rooks, Pitts & Poust*, 290 F.3d 843, 848-49 (7th Cir. 2002) (*citing Foman v. Davis*, 371 U.S. 178, 181-82 (1962)).

First of all, this Court should deny the Motion to Amend as untimely. Plaintiff has waited over seven months in seeking permission to amend his complaint and Defendants justly believed that Count I had been permanently dismissed. Second, Plaintiff's proposed amendments are futile. In his Motion to Amend, Plaintiff asserts three reasons why he should be granted leave to amend: (1) that he has uncovered in discovery that Levitt has malice towards him (Motion to Amend, ¶ 6); (2) that the Amended Complaint "makes explicit" that the Book was intended for academics (id.); and (3) he is entitled to assert a new libel *per quod* claim (id.). Each of these contentions fails to provide any basis for allowing Plaintiff a second and untimely bite of the apple at the end of this litigation. Indeed, even if the proposed amendments were timely, they still would not be cognizable and this attempt would be futile.

**I. PLAINTIFF HAS UNDULY DELAYED THE BRINGING OF THIS MOTION AND THUS SHOULD BE DENIED PERMISSION TO AMEND.**

The Court can and should deny the Motion to Amend as untimely because the proposed Amended Complaint comes well after this dismissal of Count I and adds nothing new to the Complaint. The Complaint already included the allegation that the Book was read by academics (Compl. ¶ 12), the Excerpt contained all of the statements Plaintiff seeks to focus on in the

Amended Complaint, and Plaintiff certainly could have asserted a claim for defamation *per quod* had he chosen to do so. The only "new" information Plaintiff points to – that Levitt supposedly "hates" Plaintiff or was "hostile" to Plaintiff – relates to common law malice (i.e., ill will or evil motive), not constitutional malice (knowledge of whether an allegedly defamatory statement was false or whether it was published with knowledge of probable falsity). *See New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964).

Under these circumstances, Plaintiff unduly delayed in bringing this motion. *See Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.*, 125 F.3d 468, 480-81 (7th Cir. 1997) (where there are no new facts, there is no reason why the plaintiff could not have amended the complaint at an earlier date); *see also Conyers v. Abitz*, 416 F.3d 580 (7th Cir. 2005) (where plaintiff sought to amend nearly two years after filing suit in large part on the grounds that he had "mistakenly or inadvertently" failed to address everything in his original complaint, the proposed amendment would unduly delay the litigation and prejudice the defendants).

Moreover, the fact that Plaintiff brings this motion well over a year after filing suit, seven months after this Court dismissed his defamation *per se* claim with prejudice, immediately on the heels of the parties having settled the only remaining claim in this litigation, and the day before the date on which discovery was scheduled to close as to that remaining claim, constitutes undue delay. *See Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470 (7th Cir. 1991) (denying motion for leave to amend at the close of discovery, more than one month after the defendant had filed for summary judgment); *Manufacturer Direct, LLC v. DirectBuy, Inc.*, No. 2:05 CV 451, 2007 WL 2114285 (N.D. Ind. July 19, 2007) (denying motion for leave to amend two years after plaintiff filed the action, as discovery was set to close, the trial date was set, and the deadline for filing dispositive motions approached) *citing Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774

(7th Cir. 1995) ("[t]here must be a point at which a plaintiff makes a commitment on the theory of his case"); *see also Badillo-Santiago, M.D. v. Naveira-Merly*, 378 F.3d 1 (1st Cir. 2004) (affirming denial of leave to amend where plaintiff sought leave one month after the court had ruled on defendants' motion to dismiss and a full year after filing of the complaint).

In view of that lengthy passage of time, Defendants would be severely prejudiced if they now, after the entire complaint had been dismissed, are compelled to respond to allegations in an amended complaint, file another motion to dismiss, and possibly even engage in another round of time-consuming and costly discovery on issues that they assumed had been disposed of. Defendants over these past seven months have been operating on the basis that Plaintiff has an interest only in appealing Count I of the Complaint. If Plaintiff seriously wanted to amend Count I, he surely should have taken steps to bring that to the attention of this Court and the Defendants before dragging out extremely expensive and lengthy discovery, which could have addressed those additional allegations.

Plaintiff's motion is untimely and is prejudicial to Defendants. There is simply no basis for allowing him to relitigate claims he already lost at an earlier stage in the proceedings. The Motion to Amend should be denied.

**II.  PLAINTIFF SHOULD NOT BE PERMITTED TO AMEND THE COMPLAINT BECAUSE EACH OF HIS PROPOSED AMENDMENTS ARE FUTILE.**

**A.  Plaintiff's Amendments to Count I Do Not Alter This Court's Conclusion That The Excerpt Cannot Support a Claim for Defamation *Per Se*.**

Amending a complaint is futile where it is incapable of surviving a motion to dismiss. *Sound of Music Company v. Minnesota Mining and Manufacturing Co.*, 477 F.3d 910, 922-23 (7th Cir. 2007). If a complaint has already been dismissed for failure to state a claim, proposed amendments that do not overcome the deficiencies in the complaint are futile. *See Sigsworth v. City of Aurora*, 487 F.3d 506, 512 (7th Cir. 2007) (the proposed amendments were futile because

8

they simply added "detail" to plaintiff's initial allegations and did not overcome the deficiencies of the existing complaint that lead to dismissal); *188 LLC v. Trinity Industries, Inc*., 300 F.3d 730, 739 (7th Cir. 2002) (affirming denial of leave to amend where the proposed additional claim simply raised new arguments as to why the previously-dismissed claim in the existing complaint was valid); *Ross v. City of Waukegan*, 5 F.3d 1084, 1088 (7th Cir. 1993) (affirming denial of leave to amend where the proposed allegations were "within the ambit of" the court's earlier decision dismissing the action); *Ross v. United States*, 910 F.2d 1422, 1427 (7th Cir. 1990) (despite plaintiff's attempt to recharacterize the facts, the amended complaint remained legally insufficient and was properly rejected).

Here, Plaintiff's proposed amendments to Count I do not affect this Court's conclusion that applying the Illinois innocent construction rule, the Excerpt can reasonably be read in a non-defamatory *per se* fashion, and therefore must be dismissed. In dismissing Count I, the Court considered and rejected the argument that the Excerpt can only be read as a defamatory *per se* allegation from the perspective of the academic community (Opinion at 7), so Plaintiff's proposed amendments about the Book's relationship to academia do not save his claim. Further, while Plaintiff cherry-picks certain additional words in the Excerpt as being defamatory *per se*, the Court considered these additional words in rendering its decision. (Opinion at 6 (explaining that in applying the innocent construction rule, Illinois law requires courts to consider the statements in context and "consider all parts of the publication in order to ascertain the true meaning of the words"); *see also id.* at 1 (stating that the Court read the entire Book) and 2-3 (setting forth the Excerpt in full, including the words Plaintiff complains of in the Amended Complaint)).

Moreover, even if this Court were to reconsider the newly complained-of words, there certainly are reasonable constructions of those words that do not accuse Lott of having invented or faked his data, as the Amended Complaint alleges. Instead, the Book says that "there was the troubling *allegation* that Lott actually invented some of his survey data...*Regardless of whether the data were faked...*" (Emphasis added.) The Book *does not* state whether the "allegation" was in fact true, but expressly leaves the inquiry aside, without taking a position on it in any way. Because a reader could just as easily conclude that Lott may not have engaged in any improprieties, the newly complained-of statements may be reasonably interpreted in a non-per se manner, and therefore cannot be actionable *per se*. *See* Opinion at 6, *citing Bryson v. News Am. Publ'ns, Inc.*, 174 Ill. 2d 77, 93, 672 N.E.2d 1207 (1996).

Finally, Plaintiff seeks to amend Count I to include allegations that Levitt "hated" Lott, Amended Compl. ¶ 16-20. These allegations obviously are irrelevant to the meaning of the Book. Whatever Levitt's motive was, it cannot change the words of the Book, which plainly are protected by the innocent construction rule. Standing alone, that fact requires dismissal of Count I. *Bryson*, 174 Ill.2d at 91, 94, 672 N.E.2d at 1216-17.

Accordingly, even if Lott were permitted to amend the Complaint, Count I simply cannot survive a second motion to dismiss for the same reasons that this Court already dismissed that claim. Plaintiff's proposed amendments are therefore futile, and the Motion to Amend should be denied.

**B.     Count II of the Amended Complaint Fails to State a Claim For Defamation *Per Quod* Because It Does Not Plead Special Damages.**

Plaintiff's proposed amendment to add a second claim for defamation *per quod* is just as futile as his proposed amendment to Count I. As a matter of substantive Illinois defamation law, a plaintiff must plead and prove special damages with particularity to recover under a *per quod*

theory. *Bryson*, 174 Ill. 2d at 103. Special damages are actual, economic losses. *Maag v. Ill. Coalition for Jobs, Growth & Prosperity*, 368 Ill. App. 3d 844, 853, 858 N.E.2d 967, 975 (5th Dist. 2006); *Kurczaba v. Pollock*, 318 Ill. App. 3d 686, 694, 742 N.E.2d 425, 433 (1st Dist. 2000). Moreover, Fed. R. Civ. P. 9(g) requires a plaintiff to plead special damages with particularity. *Action Repair, Inc. v. American Broadcasting Co.*, 776 F.2d 143, 150 (7th Cir. 1985). Blanket statements alleging general damages, such as injury to reputation or economic loss, are insufficient to state a libel *per quod* claim. *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 733, 544 N.E.2d 988, 992-93 (1st Dist. 1990). A complaint must do more than allege that the injury suffered was the natural result of the alleged defamation; the allegation of special damages must be "explicit." *Brown & Williamson Tobacco Corp. v. Jacobsen*, 713 F.2d 262, 270 (7th Cir. 1983).

Here, Plaintiff alleges only that based on his encounters with "persons in job interviews and at academic seminars who indicated that they had read the statements and innuendo and… believed [them] to be true," "he has sustained actual damages." (Am. Compl. at ¶ 22.) This vague and conclusory statement is insufficient to state a *per quod* claim as a matter of law. Courts routinely dismiss *per quod* claims, like Plaintiff's here, that allege only injury to reputation or generalized economic injury, rather than setting forth actual financial loss. *See e.g., Salamone v. Hollinger Int'l Inc*, 347 Ill. App. 3d, 873. 843-44, 807 N.E.2d 1086, 1092-93 (1st Dist. 2004) (allegations that plaintiff "suffered humiliation, embarrassment and harm to his reputation," loss of repeat business customers, sleeplessness, depression and weight loss held insufficient pleading of special damages); *Maag*, 368 Ill. App. 3d at 853, 858 N.E.2d at 975 (statement that plaintiff had "been injured in his personal reputation and in his professional reputation. . .", had "suffered personal humiliation, mental anguish and mental suffering", and

had lost salary and benefits, held insufficient). *See Hunter v. Cook County Ill.*, 1993 WL 311913, at *4 (N.D. Ill. Aug. 11, 1993) (complaint did not allege special damages where it did not indicate the amount of damages plaintiff suffered by the alleged defamation or how he incurred those damages); *Kirk v. CBS, Inc.*, No. 83 C 2764, 1987 WL 11831, at *6 n.2 (N.D. Ill. June 4, 1987) (conclusory allegations of damage to plaintiff's reputation and medical practice were insufficient).[3]

Plaintiff simply should not be allowed to amend his Complaint to allege special damages where he cannot allege that Plaintiff suffered actual pecuniary loss as a result of the statements complained of. The Book was published in 2005. If he cannot articulate his special damages by now, they do not exist.

Accordingly, Lott's proposed amendment to add a second count for defamation *per quod* is futile and the Motion to Amend should be denied.

---

[3] *See also Heerey v. Berke*, 188 Ill. App. 3d 527, 532-33, 544 N.E.2d 1037, 1041 (1st Dist. 1989) (claim that defamatory statements caused plaintiff "to suffer distress of mind, mental anguish, acute nervousness, bodily pain and that her reputation for honesty and integrity, business opportunities, as well as her standing in her profession have been impaired" held insufficient); *Anderson v. Vanden Dorpel*, 172 Ill. 2d, 399, 416-17, 697 N.E.2d 1296, 1304 (1996) (allegations that plaintiff "has been damaged monetarily by losing gainful employment and wages" held insufficient); *Kurczaba*, 318 Ill. App. 3d at 695, 742 N.E.2d at 433 (allegation that plaintiff suffered a "loss of income" and humiliation, mental anguish and emotional distress held not to plead special damages); *Taradash v. Adelet/Scott Fetzer Co.*, 260 Ill. App. 3d 313, 318, 628 N.E.2d 884, 888 (1st Dist. 1993) (allegations that customers refused to deal with plaintiff resulting in lost income held insufficient); *Schaffer*, 196 Ill. App. 3d at 733, 544 N.E.2d at 992-93 (allegations that plaintiff was injured in his professional reputation held insufficient); *Paul v. Premier Elec. Const. Co.*, 581 F.Supp. 721 (N.D. Ill. 1984) (complaint failed to allege special damages because it did not allege any basis for the damages figure or a connection between the statements complained of and the damage, nor did it specify the nature of the damage).

## **CONCLUSION**

For the foregoing reasons, defendants HarperCollins and Levitt respectfully request that this Court deny Plaintiff's motion for leave to amend, and grant such other relief as the Court may deem appropriate.

Dated:  August 14, 2007                                    HARPERCOLLINS PUBLISHERS LLC AND
                                                                                STEVEN D. LEVITT


                                                                    By:    /s/ Slade R. Metcalf
Slade R. Metcalf                                                              One Of Their Attorneys
Gail C. Gove
HOGAN & HARTSON LLP
875 Third Avenue
New York, New York 10022
(212) 918-3000

David P. Sanders
Wade Thompson
JENNER & BLOCK LLP
One IBM Plaza
Chicago, Illinois 60611
(312) 222-9350

1566100v1